### 73. LESTER-WHITNEY SHOE CO. *v.* OLIVER CO.

1. In order to hold the payee of a check liable for failure to present it, in the event of the failure of the bank on which it is drawn, the maker of the check must have in bank, subject to the payment thereof at any and all times after the drawing of the check, either funds of his own subject to the check, or some positive agreement or understanding with the bank, which will guarantee the payment of the check at such time as it may suit the pleasure, convenience, or interest of the holder to present it.

2. Before the payee of a check can be held liable for damages in not presenting the check, it must appear, either directly or from the circumstances of the transaction, that he has accepted the check from the drawer, or that he is under some obligation to do so.

3. The issuance of a check includes two guarantees on the part of the maker,—that the bank on which the check is drawn is solvent, and that his check will be paid on presentation.

4. If the maker of a check has on deposit in a bank money sufficient to pay the same, and the owner fails to present it for payment within a reasonable time, during which time it would have been paid if presented, and the bank fails between the time of drawing and the presentation thereof, the drawer is discharged from liability to the extent of the injury he may have sustained by reason of such failure. The requirement of presentation within a reasonable time on the part of the holder of the check is coupled with the requirement, as to the maker, that the check shall certainly be paid when it is presented.

5. If the drawer has no effects in the hands of the drawee, and there is no positive agreement to pay by the drawee, the making of the check will be considered fraud on the part of the drawer, and presentation and notice will be excused.

6. The admission of the book of which complaint is made in the 5th ground of the amended motion for a new trial was error. It was not sufficiently identified as one of the books of the bank, nor was it shown who kept it or that it was correctly kept. *Talbotton R. Co.* v. *Gibson*, 106 *Ga.* 236. But the error was harmless, because, when the defendant attempted to set up his damages accruing by reason of non-presentation of his check, against the claim of the plaintiff, it devolved upon him to show affirmatively that the funds were on hand to meet the check, throughout the entire period from the making of the check to the failure of the bank. If the defendant failed in this, he was not entitled to a credit; because a check is not payment until itself paid; and it devolves upon the maker, in the event of its non-payment, to show why it should be treated as a payment for his benefit.

7. Consequently the correctness of that portion of plaintiff's account which was covered by the check and equal thereto in amount being admitted, and defendant failing to show damage by the non-presentation of his check, a verdict for the plaintiff was demanded.

Complaint, from city court of Macon—Judge Hodges. June 29, 1906.

Argued February 6,—Decided February 20, 1907.

*Hardeman & Jones, E. P. Johnston,* for plaintiff in error.

*John P. Ross, Erwin & Callaway,* contra.

RUSSELL, J. The plaintiff (now defendant in error) sued the defendant (who brings this writ of error as plaintiff in error), on an account, in the city court of Macon. To part of the account the defendant pleaded failure of consideration; and no complaint is made as to so much of the verdict as relates to that portion of the alleged indebtedness. As to the other portion of plaintiff's account, the defendant pleaded plaintiff's failure to present within a reasonable time, and before the failure of the bank on which it was drawn, a check sent by defendant in payment of that part of the account; and the assignment of error is addressed to this portion of the account, and based on the refusal of the trial court to award a new trial thereon.

The third ground of the motion for new trial asserts that the verdict is contrary to law, because "the evidence showed that defendant, on the 9th day of December, 1903, sent by U. S. mail to Jorolomon Oliver & Company its check on I. C. Plant's Son Bank for the sum of two hundred and fourteen dollars and ten cents, which said check was duly received by the said Jorolomon Oliver & Company, and accepted by it as a payment on said account. At the time defendant sent said check to said Jorolomon Oliver & Company, it had on deposit with said I. C. Plant's Son Bank, subject to said check, a sufficient sum to pay the same, and continuously since said December 9th, 1903, it has on deposit with said bank a sufficient sum to pay said check. But so it is that said check has never been presented to said bank for payment, and on May 16th, 1904, the said I. C. Plant's Son, Banker, became insolvent and he has since been duly adjudged a bankrupt. Wherefore defendant says it has paid upon said account the sum of two hundred and fourteen dollars and ten cents, and defendant is entitled to have said payment credited upon the account sued on; and by reason of the conduct of said Jorolomon Oliver & Company, defendant has been discharged from liability to the plaintiff upon said account to the extent of two hundred and fourteen dollars and ten cents." In the fourth ground it is insisted that the court erred in directing a verdict for the amount of the check. The fifth ground of the motion complains that

the court erred in admitting in evidence, over the objection of defendant, certain pages from a book offered in evidence as the ledger of I. C. Plant's Son, Banker; the objection being, (1) because the identity of the book had not been established; (2) because it had not been shown to have been correctly kept; (3) because it does not appear who kept it; (4) because the book is not relevant on this hearing and is the transaction of a third person, whose action and conduct can not be used to bind the Lester-Whitney Shoe Company in this case; (5) because it does not appear that the Lester-Whitney Shoe Company had anything to do with the keeping of the book. And movant insisted that the admission of this book was distinctly hurtful to the defendant, because in the absence of said book there was no evidence to contradict the testimony of L. P. Lester that they had money on deposit to meet the check from the date he gave it until the failure.

The sixth ground assigns error in the following charge to the jury: "With reference to the check introduced in evidence, in the opinion of the court as to the law of the case, you will bring in a verdict in any event in favor of the plaintiff in this case for the face value of that check with interest from the date of it; because in the judgment of the court that is the law of the case and that will control you in reference to the check. So whatever your finding may be upon the other branches of the case, you will bring in a verdict in favor of the plaintiff against the defendant for the value of the check with interest from the date of the check." The error as insisted is that plaintiff was not entitled to recover the amount of the check as a matter of law, and the court should either have left to the jury the question whether or not the defendant was guilty of fraud towards plaintiff sufficient to relieve the plaintiff of the duty of presenting the check, and whether or not under the circumstances plaintiff was under any necessity or duty to present the check; or should have instructed the jury as a matter of law under the undisputed facts defendant had sustained injury to the amount of the check by the failure of the plaintiff to present it.

It appears from the evidence that the defendant gave the plaintiff an order to manufacture certain shoes according to samples, the plaintiff being a shoe manufacturer and not carrying the shoes in stock. It was an entire contract. The plaintiff manufactured

and shipped the shoes, and they were duly received by the defendant. The defendant sought to accept a portion of the shoes and to reject about one third of them. The plaintiff refused to consent to the partial rescission of the contract, and the defendant retained all of the shoes, but refused to pay for any of them unless the plaintiff would credit the purchase-price with the contract price of the shoes the defendant had sought to reject. It appears from the evidence in the record that, "after much controversial correspondence, on December 9, 1903, the parties being still at issue as to the debt due, the defendant tendered the plaintiff its check for $214.10, and the shoes which the defendant desired to reject, and the return of which the plaintiff had refused, in settlement of the matter."

The material part of the letter accompanying the check (after again complaining of the shoes) is as follows: "We again tender you a settlement of the matter. We enclose our check on I. C. Plant's Son Bank for $214.10, to pay for the portion of the bill we accepted. Remainder of the goods to the amount of $101.40, are here subject to your order. They have not been opened since they came in the last time." The plaintiffs had possession of this check from December until May, during which latter month the bank of I. C. Plant's Son, on which the check was drawn, failed. The charge of the court on this subject amounted to the direction of a verdict, and is to be closely scanned. In every case where a verdict is directed, it is at the peril of an invasion of the right of trial by jury. For, as this court held in *Davis* v. *Kirkland,* ante, 5, to direct a verdict was originally always error, and is only sanctioned by the code where the error is harmless, because, under the evidence in that special case, no other verdict would be right or could legally be found. The whole issue then, so far as here contested, turns on the questions, (1) whether the plaintiff was bound to present the tendered check for payment? And (2) if so, did the defendants suffer such damage by reason of the failure of the plaintiff to present the check as would entitle the defendant to credit for the amount, as though the check had been presented and paid? It was admitted that if there was damage at all, the measure of the defendant's damage by the non-presentation was $214.10, the amount of the check. "Had the plaintiff accepted the tender of settlement, it would have been bound to

present the check for payment within a reasonable time, and it would have been liable for any loss occasioned defendant by its failure so to present the check. Had the plaintiff presented the check for payment, such act would have been an acceptance of the tender of settlement, and the plaintiff would have been bound to accept the return of the objectionable shoes in response to the letter above quoted. The plaintiff promptly notified the defendant that it would not accept the tendered settlement, and that it would not accept the check for $214.10 and the return of the shoes objected to, in settlement of the debt due by defendant, but stated that it would hold the check to give the defendant an opportunity to remit the balance of the debt due. It is manifest that the plaintiff meant to convey to the defendant the information that it would not present the check for payment, or otherwise manifest an acceptance of the tender of settlement made, but would hold the check to await another check to cover the balance the plaintiff claimed to be due on the debt, and would then present both checks for payment. And it is clear that the defendant so understood; for the defendant, on December 19, 1903, in answer to the letter of the plaintiff's agent, giving notice of the rejection of the tendered settlement and the conditional holding of the check, recognized that the plaintiff had rejected the tendered settlement and refused to accept the check, saying, "We offered our check . . but the A. H. Oliver Co. declined to accept same." Then, did the evidence by any possible construction show that the plaintiff was bound to present the check, or, failing to do so within a reasonable time, thereby entitled defendant to a credit of its amount on plaintiff's account?

It is well settled that the failure to make demand within a reasonable time is at the risk of the holder; and some of the authorities go to the length of saying that the onus of showing that the drawer has sustained no loss by the delay lies on the holder. *Daniels* v. *Kyle,* 1 *Ga.* 304. And the charge of the trial court on this subject which was then approved, and which was certified to have been given when the case again appeared in 5 *Ga.* 245, was as follows: "If the defendant had on deposit in said bank money, or any effects of value, at the time of drawing said check, and the owner thereof failed to present the same for payment within reasonable time, and the bank failed between the time

of drawing and the presentation thereof, the drawers were discharged from liability to the extent of the injuries they may have sustained by reason of such failure." To the same effect is *Comer* v. *Dufour,* 95 *Ga.* 378. This is the rule as to *holders,* but the antecedent question to be determined is, was the plaintiff ever, in the sense of the law, a holder, so as to be subject to these well-settled rules? The evidence of both the plaintiff and the defendant, as shown by their letters, demonstrates, without question, that the check was first offered by the defendant in settlement; that it was never accepted by the plaintiff, and that the defendant knew, recognized, and in writing admitted this fact. A check is not payment until itself paid, and of course a check declined is not such acceptance as to make the party to whom it is sent and who expressly refuses to accept it, and who keeps it only while further negotiations are pursued, merely to see if he can not effect a collection of his entire claim, a holder. If there had been dispute on this proposition, it should have been submitted to the jury. But as there was none, the charge of the judge directing a verdict as to this portion of plaintiff's claim is not reversible error.

We think it was error to admit the bank ledger in evidence in this case, in the face of the timely objection made; but the burden of showing that there were funds on hand to meet the check was upon the drawer of the check, and if he does not show that there are funds subject to his check at all times after the making of the check, or some other arrangement by which payment of his check is guaranteed at any time the payee may desire to present it, he can not claim damage against a holder for unreasonable delay in presentation. Leaving out of the case the book erroneously admitted, no proof was adduced on that subject by the defendant, except that he had overdrawn at bank when the check was drawn, and may have overdrawn several times afterwards; instead of proving, as he was bound to do, by something more than mere inference, that it was the duty of the bank to pay this check whenever presented, either out of his money or by express contract to allow an overdraft. We understand the rule in *Tomlin* v. *Thornton,* 99 *Ga.* 585, just as, no doubt, the learned judge understood it. While the law limits the guarantee of the maker of the check as to the solvency of the bank to a reasonable time,

it is perfectly plain that the law does intend that the holder shall find enough money there at any time he may present his check, and all of the time until the bank becomes insolvent, to pay it. "If at the time the check was delivered to the payee the bank was solvent, and held funds of the drawer sufficient to meet it, it would be a fraud for the drawer, after giving a .check upon them, to withdraw the amount which should pay it; and as he could not rightfully withdraw the amount, it would be unjust to require that, however long the check holder might permit it to remain, it should be at the drawer's risk." So that we think that there was no error in directing the verdict; because no other verdict could have lawfully been found.                *Judgment affirmed.*