BLACKWELDER, RESPONDENT, *v.* FERGUS MOTOR CO. ET AL., APPELLANTS.

(No. 6,200.)

(Submitted October 17, 1927. Decided November 1, 1927.)

[260 Pac. 734.]

*Injunction—Sale of Mortgaged Chattels—Payment of Debt— Banks and Banking—Checks—When Deemed Payment of Debt—Complaint—Conclusions—When Deemed Amended— Prayer not Part of Complaint—Implied Findings—Presumptions.*

Injunction—Pleading—Bare Statement of Lack of Remedy at Law a Conclusion—Cause Tried on Theory of Its Sufficiency—Objection of Insufficiency on Appeal Looked upon With Disfavor.
1. While the bare statement in the complaint, in a suit to enjoin the sale of grain at the instance of the mortgagee, that plaintiff has no plain, speedy or adequate remedy at law is but a conclusion vulnerable to a demurrer, where the cause was tried on the theory that the complaint was sufficient, objection to its sufficiency raised for the first time on appeal is looked upon with disfavor and every inference will be drawn from the facts stated necessary to uphold the pleading.

Pleading—Insufficient Complaint—When Deemed Amended.
2. Where proof under an alleged insufficient complaint was admitted without objection at the trial of the cause, it will on appeal be deemed to have been amended to conform to the proof.

[80 Mont. 374.]

Same—Prayer not Part of Complaint—Prayer for General Relief in Suit to Enjoin Sale of Mortgaged Chattels—Prayer Sufficient to Warrant Cancellation of Note Because Paid.

3. The prayer for relief is not a part of the complaint and will be disregarded where the sufficiency of the pleading is attacked for the first time on appeal; therefore in an action to enjoin the sale of grain under a power of sale given in a mortgage on the ground that the note as security for which it had been given had been paid, it is immaterial that the complaint did not demand cancellation of the note and mortgage, the prayer for general relief under the circumstances being sufficient.

Chattel Mortgages—Sale of Chattel—Alleged Payment of Note—Injunction—Question of Payment Determinable Prior to Sale.

4. Where a mortgagee of chattels seeks to sell them under a power of sale therein given, without action, and the mortgagor asserts payment of the debt to secure which it was given, he has the right to have the question of payment determined prior to the exercise of the power of sale and may enjoin the mortgagee from proceeding with the sale until such determination.

Banks and Banking—Deposit of Check—Presumption.

5. Where a check upon a foreign bank is deposited by the payee in a local bank without special agreement, the presumption is that it was deposited for collection only and that title remained in the depositor.

Same—Checks—When not Payment.

6. When a customer of a bank issues a check thereon and delivers it to his creditor instead of withdrawing the amount and paying it over to the latter, the check is not payment of the amount due, but is given with the implied promise that the drawer will pay the amount if the drawee bank fails to do so.

Same—Checks—When Drawer Discharged.

7. The drawer of a check sent to his creditor in another city takes the risk of delay in the mail and of loss through the insolvency of the bank upon which it is drawn during the reasonable period necessary for its presentment in the usual manner; if not presented for payment within a reasonable time after its issuance, the drawer is discharged from liability thereon to the extent of the loss caused by the delay, provided there be a showing of loss or injury by reason of the delay.

Same—Tendering Payment by Check Through Mail—Presumptions.

8. A person tendering payment by check through the mail is deemed to have knowledge of the usual and customary method of making presentment through a bank at the place to which it is sent, and a bank receiving a check for collection may send it for payment direct to the bank upon which it is drawn, without being chargeable with negligence on its part or that of its customer, the reasonableness of the time and manner of presentment for payment being dependent upon the circumstances surrounding the transaction.

Same—Method Adopted for Forwarding Check—When Drawer not Open to Charge of Negligence.

9. Where the customary course and method of transmission of a check is followed, the check being forwarded to the drawee

---

3. See 21 R. C. L. 489.
5. See 3 R. C. L. 524.
6. Acceptance of check as payment, see note in 69 Am. St. Rep. 346. See, also, 21 R. C. L. 60 et seq.

bank the day of its deposit in the collecting bank, and the check fails of payment because of insolvency of the drawee bank, the fact that it later appeared that it could have been collected by some more expeditious method will not render failure of recourse to the more expeditious method negligent, in the absence of circumstances known to the payee or his agent (the collecting bank) at the time making it imprudent to follow the course pursued.

Equity—Implied Findings.

10. Where, in an equity case, a certain finding (not made by the court) is necessary to support the judgment, it will be implied.

Same—Finding Based on Conflicting Testimony Conclusive, When.

11. A finding made on sharply conflicting testimony will not be disturbed on appeal if there is substantial evidence in the record to support it, even though the evidence may appear inherently weak.

Banks and Banking — When Payee must Present Check for Payment at Earliest Opportunity.

12. Where the payee named in a check has knowledge of the insolvency or precarious financial condition of the bank on which it is drawn in a place other than that of his residence, he must present it for payment at once at the first opportunity, the rule that on receipt of such a check he may, without imputation of negligence, deposit it in his bank the following day and the bank as his agent may forward it for collection the day following not applying under such circumstances.

Same—Duty on Payee Named in Check to Notify Maker of Dishonor.

13. One receiving a check must not only use due diligence in presenting it for payment, but must use like diligence in notifying the maker of its dishonor if it be not paid, to enable the latter to protect himself from loss, and if the payee fails to notify him and loss is suffered, it must fall upon the payee.

Same—Failure of Drawee Bank to Return Check as Nonaccepted—Effect.

14. Where a bank fails to return a check drawn upon it within twenty-four hours as nonaccepted it will be deemed to have accepted it and the relation of debtor and creditor arises between the bank and the payee, and that relation, as between the bank and the maker of the check, is extinguished to the extent of the amount of the check.

Same—Circumstances Under Which Check Mailed to Creditor will be Held Payment of Debt.

15. Plaintiff was indebted to defendant on a promissory note secured by a chattel mortgage. He resided on a farm some miles away from the bank with which he did business and sent a check in payment of the note by mail, which was received by the creditor doing business in a city some forty miles distant on a Saturday after banking hours. On the succeeding Monday he deposited it for collection and was informed by the bank's officers that the bank upon which it was drawn was in a failing condition; nevertheless the check was sent by mail to that bank and by it held for five days, during which time checks presented over the counter were paid; it was returned to the collecting bank on suspension of the drawee bank. Plaintiff was not notified

---

14. Failure to return check as affecting question of whether taken as payment, see note in **L. R. A.** 1918C, 161.

[80 Mont. 374.]

of the bank's failure to pay the check. *Held*, in an action by plaintiff to enjoin the sale of the mortgaged chattel and to have the note declared canceled as paid, that, under the above rules and the circumstances of the case, the check constituted payment.

[1] Appeal and Error, 3 C. J., sec. 706, p. 784, n. 53; sec. 708, p. 787, n. 77. Equity, 21 C. J., sec. 399, p. 387, n. 40. Injunctions, 32 C. J., sec. 542, p. 329, n. 25. Pleading, 31 Cyc., p. 57, n. 39 New, p. 82, n. 13.
[2] Appeal and Error, 4 C. J., sec. 2683, p. 750, n. 92. Pleading, 31 Cyc., p. 727, n. 40.
[3] Appeal and Error, 3 C. J., sec. 706, p. 784, n. 59. Chattel Mortgages, 11 C. J., sec. 501, p. 703, n. 24. Pleading, 31 Cyc., p. 110, n. 97, p. 111, n. 99.
[4] Appeal and Error, 3 C. J., sec. 908, p. 987, n. 41. Chattel Mortgages, 11 C. J., sec. 495, p. 702, n. 96, 97, 98.
[5] Banks and Banking, 7 C. J., sec. 245, p. 597, n. 32; sec. 314, p. 635, n. 27.
[6] Payment, 30 Cyc., p. 1207, n. 96.
[7] Banks and Banking, 7 C. J., sec. 383, p. 673, n. 79.
[8] Banks and Banking, 7 C. J., sec. 281, p. 616, n. 67 New. Bills and Notes, 8 C. J., sec. 83, p. 62, n. 73; sec. 752, p. 539, n. 17; sec. 758, p. 546, n. 67. Evidence, 22 C. J., sec. 46, p. 107, n. 54 New.
[9] Banks and Banking, 7 C. J., sec. 273, p. 612, n. 30.
[10] Appeal and Error, 4 C. J., sec. 2728, p. 779, n. 83 New.
[11] Appeal and Error, 4 C. J., sec. 2853, p. 877, n. 79; sec. 2855, p. 884, n. 37.
[12] Bills and Notes, 8 C. J., sec. 752, p. 540, n. 20, 21; sec. 754, p. 542, n. 43, p. 543, n. 52; sec. 758, p. 546, n. 67.
[13–15] Banks and Banking, 7 C. J., sec. 404, p. 680, n. 52. Bills and Notes, 8 C. J., sec. 890, p. 635, n. 39; sec. 917, p. 650, n. 29.

*Appeal from District Court, Fergus County; Edgar J. Baker, Judge.*

ACTION by Clarence Blackwelder against the Fergus Motor Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Mr. William W. Blackford,* for Appellants, submitted an original and a reply brief and argued the cause orally.

In determining what is a reasonable time for the presentation of a check regard must be had to the usage of banks relating to the presentation of checks for payments, and presentment being made by mail through the Lewistown bank in the ordinary and usual course of business is, as a matter of law, made within a reasonable time. (*Plover Savings Bank* v. *Moodie,* 135 Iowa, 685, 110 N. W. 29, 113 N. W. 476; *Citi-*

*zens Bank of Pleasantsville* v. *First National Bank of Pleasantsville*, 135 Iowa, 605, 113 N. W. 481; *First National Bank* v. *Korn* (Mo. App.), 179 S. W. 721; *Cox* v. *Citizens' State Bank*, 73 Kan. 789, 85 Pac. 762.)

Payment of a check need not be demanded immediately, but if the party receiving it and the bank on which it is drawn are in the same place, presentation of it on the day after it is received is timely, and if they are not in the same place, it is only necessary to put it in the course of collection within such time. (*Cox* v. *Citizens' State Bank*, 73 Kan. 789, 85 Pac. 762; *Haggerty* v. *Baldwin*, 131 Mich. 187, 91 N. W. 150, 151; *Swift & Co.* v. *Miller*, 62 Ind. App. 312, 113 N. E. 447; *Northwestern Coal Co.* v. *Bowman*, 69 Iowa, 150, 28 N. W. 469; *Lloyd* v. *Osborne*, 92 Wis. 93, 65 N. W. 859; *Holmes* v. *Roe*, 62 Mich. 199, 4 Am. St. Rep. 844, 28 N. W. 864; *Plover Savings Bank* v. *Moodie*, 135 Iowa, 685, 110 N. W. 29, 113 N. W. 476; *Citizens Bank* v. *First National Bank*, 135 Iowa, 605, 113 N. W. 481.)

When a check on an out-of-town bank is presented to the drawee through the ordinary channels of business, as here, there is no failure of due diligence. (*First National Bank* v. *Korn* (Mo. App.), 179 S. W. 721; *Lewis, Hubbard Co.* v. *Montgomery Supply Co.*, 59 W. Va. 75, 4 L. R. A. (n. s.) 132, 52 S. E. 1017; *Lloyd Mortgage Co.* v. *Davis*, 51 N. D. 336, 36 A. L. R. 465, 199 N. W. 869; *Rosenthal* v. *Ehrlicher*, 154 Pa. 396, 26 Atl. 435; *Givan* v. *Bank of Alexandria* (Tenn.), 52 S. W. 923; *Indig* v. *National City Bank*, 80 N. Y. 100.)

We submit that under the facts of this case the check in question was presented in due course through the proper channel for payment, after its receipt by the payee; that due diligence was exercised in presenting it for payment to the drawee bank, and that it was presented within a reasonable time after its issue and receipt by the payee within the meaning of section 8593 of the Revised Codes of this state, and that respondent remains obligated to appellant Fergus Motor Company to make the check good by payment.

The Winifred bank had, not only on October 5, the very day on which respondent's check was deposited in the mail at Lewistown to be forwarded to Winifred on the following day for payment, committed acts of insolvency by not paying the checks drawn upon it, but was actually insolvent, and that was before it received respondent's check in question. Any delay in giving notice to the drawer, provided notice is given before suit is brought, does not discharge the drawer, unless it appears that a loss was sustained by the drawer as a result of such delay, and in such case the drawer is discharged only to the extent of the loss suffered. (*Morris-Miller Co.* v. *Von Pressentin,* 63 Wash. 74, 114 Pac. 912; *Sahlien* v. *Bank of Lonoke,* 90 Tenn. 221, 232, 16 S. W. 373; *Exchange Bank* v. *Sutton Bank,* 78 Md. 577, 23 L. R. A. 173, 28 Atl. 563; *Williams* v. *Braun,* 14 Cal. App. 396, 112 Pac. 465; *Offutt* v. *Rucker,* 2 Ind. App. 350, 27 N. E. 985.) But the drawer of a check is not discharged from liability by any delay in giving him notice of dishonor within a reasonable time where it appears that the dishonor of the check was due to the insolvency of the drawee bank at the time of presentment. (*Exchange Bank* v. *Sutton Bank,* 78 Md. 577, 23 L. R. A. 173, 28 Atl. 563; *Sahlein* v. *Bank of Lonoke,* 90 Tenn. 221, 232, 16 S. W. 373; *Roberts* v. *Fisher,* 43 N. Y. 159, 3 Am. Rep. 680; *Thomas* v. *Westchester County,* 115 N. Y. 47, 4 L. R. A. 447, 21 N. E. 674.)

The fact that appellant Fergus Motor Company acknowledged the receipt of the check in question, saying "this takes care of the principal," does not preclude appellant from recovering on the note and mortgage after the check was dishonored when presented. (*National Life Ins. Co.* v. *Goble,* 51 Neb. 5, 70 N. W. 503.) If the check be not paid and the payee is not negligent, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer either upon the debt or upon the check, at his option. (*National Life Ins. Co.* v. *Goble,* 51 Neb. 5, 70 N. W. 503; *Job-*

*bitt* v. *Goundry,* 29 Barb. (N. Y.) 509; Morse on Banks and Banking, sec. 543; *Fleig* v. *Sleet,* 43 Ohio St. 53, 54 Am. Rep. 800, 1 N. E. 24; *Mordis* v. *Kennedy,* 23 Kan. 408, 33 Am. Rep. 169; *Burnstein* v. *Sullivan,* 134 App. Div. 623, 119 N. Y. Supp. 317.)

The respondent is not entitled to equitable relief by way of injunction in this action. It is not the kind of action cognizable in equity. It seeks to enjoin a sale authorized by law under power of sale (sec. 8286, Rev. Codes) inserted in the mortgage of 235 bushels of wheat grain which has a market value the year around and its value easily ascertainable. The sale could have proceeded, and if it was found that the plaintiff had paid his debt to the defendant Fergus Motor Company, which we deny as to any part of it, he could recover adequate damages for the wrong. His remedy is plain, speedy, adequate and complete, and being so, the court erred in assuming jurisdiction in equity and granting the injunction against the proposed sale of which plaintiff complains. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *State ex rel. Stephens* v. *Zuck,* 67 Mont. 324, 215 Pac. 806; *Eisenhauer* v. *Quinn,* 36 Mont. 368, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac. 38; *Peterson* v. *School Board,* 73 Mont. 442, 236 Pac. 670.)

*Mr. Ralph J. Anderson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendants Fergus Motor Company and Guy Tullock, as sheriff of Fergus county, have appealed from a judgment in favor of the plaintiff, Clarence Blackwelder, perpetually enjoining them from foreclosing a chattel mortgage for the sum of $435, found by the court to have been paid on the mortgage indebtedness by the plaintiff to the Fergus Motor Company, mortgagee.

The undisputed facts, as they appear from the pleadings and proof, are substantially as follows: In May, 1925, plaintiff purchased of the motor company a Fordson tractor on a conditional sale contract, making a down payment, and giving his note for the balance of $435, payable October 1, 1925, with interest at ten per cent per annum, and, as additional security for the payment of this note, gave to the motor company a chattel mortgage on his 1925 wheat crop, raised on his ranch seventeen miles from the town of Winifred, which town is forty-five miles from Lewistown, the home of the motor company, and place of payment of the note. Winifred had but one bank, and at all times herein mentioned the plaintiff had on deposit therein more than the sum of $435.

The government maintained a rural mail route from Winifred to within a mile and a half of plaintiff's ranch, on which mail was collected and distributed on each Monday, Wednesday and Saturday. On Wednesday, September 30, 1925, the day before the payment of the note was due, plaintiff placed in his mail-box at the end of the rural route prior to the arrival of the mail carrier a letter addressed to the motor company, in which he inclosed his check on the Winifred bank for the sum of $435, being the principal of the note without the interest, which latter amounted to $16.70, and on which he indorsed "Final Payment on Tractor." Daily mail service was maintained between Winifred and Lewistown by rail on Mondays, Wednesdays and Fridays; by stage on the remaining days of the week.

The custom of the motor company was to take its daily mail from its lock box at the Lewistown postoffice four times a day: At 8:30 and 10:30 A. M., at 12:30 P. M. and in the midafternoon. The Blackwelder letter was so received by the motor company after 3 P. M. on Saturday, October 3, 1925. It was the further custom of the motor company to make a daily deposit of all receipts up to that time at 12:30 P. M. each day in the Central Bank & Trust Company of Lewistown,

which bank closed its business day at 2 P. M.  As the Black-welder check was received after banking hours on Saturday, it was not deposited until Monday, October 5, and, on its receipt, it was on the same day transmitted in the usual course of business from the Lewistown bank to the Winifred bank, and was received by the latter on October 6, and, if paid in the usual course of business, the collection should have been remitted on the seventh, the following day.  On the seventh, numerous checks, including the Blackwelder check, not having been heard from, the cashier of the Lewistown bank called the president of the Winifred bank on the phone, and demanded remittance, and repeated the demand on the ninth.  He then notified customers of the Lewistown bank, including the defendant bank, that thenceforth his bank would "only handle checks for collection on that bank."

The Winifred bank was in failing circumstances from October 3 on, and, after that date, cashed no checks received by mail, although for several days after the fifth it cashed all checks presented at the counter.  It closed on the night of October 10, and on the thirteenth the check in question was returned to the Lewistown bank by the bank examiner.  The Lewistown bank charged the check back and returned it to the motor company.

On receipt of the check on October 3 the motor company had written plaintiff acknowledging receipt and calling his attention that the payment left a balance of $16.70, on receipt of which the whole matter would be closed.  When the check was returned, the motor company wrote plaintiff that, inasmuch as the check "never cleared," the status of his account was the same as before the check was sent, and requested him to make arrangements to make the check good.  In response, plaintiff conferred with officers of the motor company, who agreed that, if plaintiff paid the sum of $150 on December 1 following, payment of the balance due would be extended until the following crop season.  Plaintiff failed to pay the amount

agreed upon on December 1, or any part thereof then or at any time thereafter, and, in March, 1926, the defendant company placed the chattel mortgage in the hands of the defendant sheriff for foreclosure under the power therein contained, and thereupon plaintiff commenced this action to enjoin such foreclosure on the ground that, through the negligence of the defendant company in presenting the check for payment as it did, the check became payment of the principal sum of the mortgage indebtedness. The acts of negligence on the part of the defendant company, as alleged in the complaint, are that, at the time the company received the check, it had knowledge that the Winifred bank was in "a failing condition," while that fact was not known to the plaintiff, but that, notwithstanding such knowledge, the defendant company deposited the check in the Lewistown bank for collection in the ordinary course of business, whereas it might have proceeded to Winifred by automobile, and presented the check at the counter, when it would have been paid as other checks so presented were paid, from funds on hand. It is further alleged in the complaint that the American Railway Express Company maintained an office with an agent in charge at Winifred, and "engages in the business, for a reasonable compensation, of presenting checks for collection drawn upon banks in towns where it maintains an office and agent."

The complaint alleges that, if there is any further sum due defendant company, "the plaintiff has been ready, willing, and able at all times, and now, is ready, willing, and able to pay" the same; that plaintiff has no "adequate remedy at law whereby he can prevent the sale and wrongful appropriation of his property," which consisted of 235 bushels of wheat in the granary. It closes with a prayer for injunctive relief, and for "such other and further relief as may be proper in the premises."

While the defendants admitted such statements as appear in the foregoing recital of uncontradicted facts and were alleged in the complaint, they denied the above allegations of

the complaint. Issue being joined, the cause was tried to the court, and, on the disputed allegations of the complaint, the testimony was substantially as follows:

The receiver of the Winifred bank showed to the court that the bank had cash on hand each day from October 1 to October 10, in excess of the amount covered by plaintiff's check. It was shown that the plaintiff and others at Winifred had no knowledge of the bank's condition during that period, and that local customers presented checks for payment, and these were paid during all of that period.

The plaintiff then testified that one Bisher, a salesman and collector for the motor company, during the week following the closing of the bank, told plaintiff that "they presented this check to the bank at Lewistown, and they didn't want to carry this said check; and that they were afraid of these checks on the Winifred bank; the only way they would cash it was on the Fergus Motor Company's guarantee."

Howard C. Gee, an attorney practicing at Winifred, testified that Bisher came to him about the first of the year 1926, and requested him to take the defendant company's claim against plaintiff for collection, but that he informed Bisher that he had already advised plaintiff in the matter; that they got into a discussion of the matter, and that he asked Bisher why they did not present the checks personally at the Winifred bank, to which Bisher replied that they presented them through the usual course of business. The witness then testified that he then told Bisher that he understood that it was known to the defendant company and to other concerns in Lewistown that, at the time the check was received, the Winifred bank was "in a shaky condition; that Bisher's answer was argumentative; that he said it did not make any difference then whether they did or not." Asked the question, "Did he say anything about the bank being in a failing condition at that time?" the witness replied: "To the best of my knowledge and belief he stated that not only they knew

it but others in Lewistown, and we had quite an extensive argument over it.''

The plaintiff, recalled, testified that one Hagelund, the manager and treasurer of the defendant company, at the time they reached the agreement as to payment of a portion of the amount of the check on December 1, told him ''the same as Mr. Bisher, they presented this check, and they didn't want to cash it at this bank, they seemed to be afraid of checks on the Winifred bank,'' and that ''he told me that, if they had got in a car * * * and came to Winifred with the check, they would have saved me $435.'' He further stated that his agreement was that he would make the payment December 1 if he could raise that much money by the date fixed.

On behalf of the defendants, Bisher testified that he had no knowledge of the condition of the Winifred bank until after it closed; that his statement to plaintiff on the occasion of the conversation mentioned by plaintiff was that Mr. Hagelund told him on October 15 that on Friday, October 9, the Lewistown bank had called him (Hagelund) up, and told him that they would receive checks on the Winifred bank thereafter only for collection. The witness testified that in the conversation with Gee he stated only that they knew there was something wrong with the Winifred bank before it closed, but referred only to the time after October 9, and that most of their conversation concerning the status of the check had to do with the bank holding it for several days without returning it. He further testified that his mission to the plaintiff's ranch was to attempt collection, and that he took the dishonored check with him, presented it to the plaintiff and plaintiff received it.

Hagelund testified that he knew nothing of the condition of the Winifred bank at the time the check was deposited in the Lewistown bank, and that there was ''absolutely nothing said'' at the time the deposit was made; that plaintiff's statement was ''incorrect''; that ''what I said was, had we known that

the bank was in a shaky condition, we most certainly would
have presented the check by automobile, and could have saved
him that amount of money in that case, and would have been
glad to do so.'' The witness further testified that plaintiff's
promise to pay the $150 on December 1 was not conditional,
but an absolute promise to then pay, on the sale of wheat then
in his possession, but which he desired to hold until the roads
got better, and when he thought the price would be better.

The court made and filed written findings, among which ap-
pears the following: ''The * * * plaintiff * * * paid
the defendant Fergus Motor Company * * * the sum of
$435 on the said note secured by said mortgage,'' and concluded
that ''the plaintiff, in so far as the said sum of $435, repre-
sented by that * * * check,'' is concerned, ''is entitled
to a permanent injunction,'' and entered judgment that the
defendants be perpetually enjoined from foreclosing the chattel
mortgage ''for the sum of $435, heretofore found by this court
to have been paid thereon.''

The defendants make seventeen assignments of error, which,
however, raise but four questions, which we will dispose of in
the order presented.

1. It is first contended that the complaint does not state facts
[1] sufficient to constitute a cause of action for injunction,
as it appears from the complaint that the subject matter of
the action is the enjoining of a sale of 235 bushels of wheat
stored in a granary, the value of which is readily ascertainable,
and the complaint contains no allegation that the defendant
company is insolvent or the sheriff's bond insufficient; that
there is no statement of fact in the complaint from which the
court may draw the conclusion, stated by plaintiff in the com-
plaint, to the effect that he has no adequate remedy at law
for the injury of which he complains, or which is threatened,
nor does the testimony strengthen the complaint.

All of the statements made concerning the complaint and
the proof are borne out by the record. The averment that
plaintiff has no adequate remedy at law is but a conclusion,
and insufficient (*State ex rel. Stephens* v. *Zuck,* 67 Mont. 324,

[80 Mont. 374.]

215 Pac. 806), and, as a court will not take jurisdiction to control action where the party has a plain, adequate and speedy remedy at law, had the sufficiency of the complaint been challenged by demurrer, such a demurrer might have been sustained. (*State ex rel. Stephens* v. *Zuck,* above; *Peterson* v. *School Board,* 73 Mont. 442, 236 Pac. 670; *Eisenhauer* v. *Quinn,* 36 Mont. 368, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac. 38.) However, this contention is now raised for the first time on appeal. The cause was tried in the lower court on the theory that the complaint was sufficient. Under these circumstances the objection now raised is looked upon with disfavor, and every reasonable inference will be drawn from the facts stated necessary to uphold the complaint. (*Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Galland* v. *Galland,* 70 Mont. 513, 226 Pac. 511; *Hodson* v. *O'Keeffe,* 71 Mont. 322, 229 Pac. 722; *Brennan* v. *Northern Electric Co.,* 72 Mont. 35, 231 Pac. 388.)

While the complaint is drawn as seeking injunctive relief [2] only, and the prayer of the complaint is so couched, it is reasonably inferable from the allegations of the complaint that the plaintiff seeks to establish the fact of payment of the mortgage indebtedness, and have the note and mortgage satisfied, at least in so far as it is alleged that the indebtedness is paid. Such allegations and proof were necessary if the court was in a position to enjoin the foreclosure of the mortgage, and, as the proof was admitted without objection, if the allegations of the complaint were insufficient, it will be deemed to be amended to conform to the proof, as such amendment would cause the complaint to conform to the theory on which the case was tried. (*United States Nat. Bank* v. *Great Western Sugar Co.,* 60 Mont. 342, 199 Pac. 245; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071; *Leggat* v. *Palmer,* 39 Mont. 302, 102 Pac. 327.)

2. Again, as the prayer for relief is not a part of the [3] complaint, and will be disregarded (*Rohr* v. *Stanton,* 78 Mont. 494, 254 Pac. 869), it is immaterial that it did not

demand that the note and mortgage be canceled as satisfied by payment, in whole or in part; it did pray for general relief, and the complaint is sufficient, as against this eleventh-hour attack, as stating a cause of action for the cancellation of the mortgage.

3. Where, as in the case at bar, a mortgagee seeks to foreclose [4] his mortgage under a power of sale therein given, without action, and the mortgagor seeks to have the mortgage declared void, or to have it adjudged that the mortgage indebtedness has been paid, or to have the amount due judicially determined, the mortgagee may be enjoined from exercising his power of sale pending the determination of the questions raised by the mortgagor. (11 C. J. 702, and cases cited; 4 Pomeroy's Equity Jurisprudence, sec. 1740.)

An analogous situation was presented and the contention raised that the complaint did not state facts sufficient to warrant injunctive relief, as plaintiff had a plain, adequate and speedy remedy at law, in *Claussen* v. *Chapin,* 69 Mont. 205, 221 Pac. 1073, and in disposing of the contention this court said: "If the chattel mortgage were void on its face, there might be merit in this suggestion, but such is not the fact. * * * If it be a fact that the mortgaged property has a determinable market value, that of itself does not prevent the interposition of a court of equity; * * * if the mortgage is in fact void, plaintiff has the right to have it so declared and the property released from the apparent lien. If the mortgage is valid, she has the right to pay the debt and save the property; * * * the injunction sought in this instance is merely ancillary to the principal purpose of the suit, which is to have the mortgage declared void and canceled of record."

So here, notwithstanding the fact that plaintiff may have an adequate remedy at law to recover the value of his property, if sold, he has the right to have the question of whether the mortgage debt has been paid, or as to what amount is still owing thereon, determined before the mortgagor shall proceed to exercise the power of sale without action. Until that de-

termination, he is entitled to have the mortgagee enjoined from proceeding under such power of sale.

Under the circumstances surrounding the presentment of this question to us, we hold that the complaint herein is sufficient.

4. The second question raised by the specifications of error is as to the sufficiency of the evidence to warrant the finding that the check in question constituted payment on the mortgage debt to the extent of the sum so sought to be paid, and is based upon the testimony regarding the manner in which the check was presented for payment.

5. The check under consideration was merely an order on the [5] Winifred bank for the payment, to the motor company, of the sum therein named, on presentation, from the credit of the plaintiff in that bank, and, when it was deposited by the payee in the Lewistown bank without special agreement, the presumption will be indulged that it was deposited for collection only, and that title remained in the depositor. (*Jensen* v. *Laurel Meat Co.*, 71 Mont. 582, 230 Pac. 1081.)

6. When a customer of a bank issues a check thereon, and [6] delivers it to his creditor, rather than withdrawing the amount and paying the creditor, the check is not given as payment of the amount due, but with the implied promise that he will pay the amount if the bank does not do so. (*Peninsula Nat. Bank* v. *Hans Pederson Construction Co.*, 91 Wash. 621, 158 Pac. 246; *First Nat. Bank of Murfreesboro* v. *First Nat. Bank of Nashville*, 127 Tenn. 205, 154 S. W. 965; *Usher* v. *Tucker Co.*, 217 Mass. 441, L. R. A. 1916F, 826, 105 N. E. 360.)

7. It is said that the maker of a check guarantees that the [7] bank on which it is drawn is solvent (*Lester-Whitney Shoe Co.* v. *Oliver Co.*, 1 Ga. App. 244, 58 S. E. 212), at least he evinces a belief in the solvency of the bank, and voluntarily takes the risk of delay in the mail and of loss through the insolvency of the bank during the reasonable period necessary for its presentment in the usual manner (*Lewis, Hubbard & Co.* v. *Montgomery Supply Co.*, 59 W. Va. 75, 4 L. R. A. (n. s.) 132, 52 S. E. 1017).

8. While the check was accepted by the motor company, and credit given therefor, these acts were conditional upon the payment of the check, in the absence of an agreement to the contrary. (*United States Nat. Bank* v. *Shupak,* 54 Mont. 542, 172 Pac. 324.) However, such a check must be presented for payment within a reasonable time after its issuance, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay (sec. 8593, Rev. Codes 1921), but this result follows only on a showing of loss or injury by reason of the delay (*Andrus* v. *Bradley* (C. C.), 102 Fed. 54; *Hoyt* v. *Seeley,* 18 Conn. 353).

9. A person tendering payment by check is deemed to have [8] knowledge of the usual and customary method of making presentment through a bank at the place to which the check is sent (*Lewis, Hubbard & Co.* v. *Montgomery Supply Co.,* above), and, under section 6108, Revised Codes of 1921, a bank doing business in this state and receiving a check for collection may send it for payment direct to the bank upon which it is drawn without being chargeable with negligence on its part or that of its customer (*Jensen* v. *Laurel Meat Co.,* above).

10. The reasonableness of the time and manner of presentment is dependent upon the circumstances surrounding the transaction. (*Cox* v. *Boone,* 8 W. Va. 500, 23 Am. Rep. 627; *Burns* v. *Yocum,* 81 Ark. 127, 98 S. W. 956; *Alexander* v. *Birchfield,* 1 Cor. & Marsh. 75, 41 E. C. L. 47.)

11. So, where the customary course and method of [9] transmission is followed, the check being forwarded the day of its deposit as in the instant case, in the absence of any circumstance known to the payee or his agent, at the time, making it imprudent to do so, the fact that it later appeared that the check could have been collected by some more expeditious method will not render that negligent which, in the absence of such knowledge, would not be negligent. (*Lewis, Hubbard & Co.* v. *Montgomery Supply Co.,* above.)

Under the sound principles above announced, it is apparent that no negligence is shown by those facts proven by the undisputed testimony above set forth, and no loss or injury

resulted from any delay, however caused, between October 3 and October 10, as the bank's condition remained the same during the whole of that period; that is, the bank paid all checks presented in person, and laid aside without action, all checks received through the mail.

12. However, the correctness of the conclusion that the check constituted payment is not solely dependent upon the undisputed proof of the regularity of the method employed for its collection in the usual course of banking business. The court had before it the further undisputed facts that the check was forwarded directly to the bank on which it was issued, rather than to some other agency for collection, and that it was held by that bank for at least five days without either payment or dishonor and notice thereof, and the sharply conflicting testimony as to whether or not the defendant company and the forwarding bank had knowledge of the "failing condition" of the Winifred bank at the time the check was sent to it.

As to the conflicting testimony, we are compelled to hold that the trial court found that the defendant company had knowledge of the failing condition of the Winifred bank at the time it adopted the method of presentation through the Lewistown bank, and was then advised that the latter bank was afraid of the former, and would only receive checks on it when the depositor would guarantee the payment thereof, or that, through failure of the Winifred bank to accept and pay the check within twenty-four hours, and the failure of the defendant company and its agent to notify the plaintiff of the dishonor of the check, the plaintiff was released from obligation, for it is only upon such an implied finding that the court could hold that the check in question constituted payment. As such [10] finding, the one or the other, is necessary to support the judgment, it will be implied. (*Polich* v. *Severson,* 68 Mont. 225, 216 Pac. 785; *Edwards* v. *Muri,* 73 Mont. 339, 237 Pac. 209.)

13. As to the correctness of such first implied finding, we are [11] bound by the rule that a finding made on sharply conflicting testimony cannot be disturbed when there is substantial

evidence in the record to support it (*Anaconda Nat. Bank* v. *Johnson,* 75 Mont. 401, 244 Pac. 141), even though the evidence may appear inherently weak (*Solberg* v. *Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168), while the second implied finding is supported by the uncontradicted testimony in the record.

14. The rule that the payee of a check is protected by the [12] presentation thereof within a reasonable time through a bank as his agent and directly to the bank upon which it is drawn is subject to the proviso that he acted in good faith, and in the absence of circumstances known to him which would reasonably render such presentment imprudent, as stated in *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.,* above (*First Nat. Bank* v. *Alexander,* 84 N. C. 30, 39 Am. Rep. 702), and if the payee has knowledge of the insolvency or precarious condition of the bank, the general rule that, on receipt of a check drawn on a bank in a place other than that of the payee's residence, he may, without the imputation of negligence, deposit it in his bank on the following day, and the bank as his agent may forward it for collection the day following its deposit, does not apply. The check must be presented for payment "at once at the first opportunity." (5 R. C. L. 506.)

When, therefore, the defendant company held the check from Saturday at 3 P. M. until Monday, and then merely deposited it in the local bank for transmission in the usual course of business, after being notified that the Winifred bank was in a precarious condition, as we must assume it was notified, and the agent bank, knowing of this condition, as we must assume it did, sent the check to the Winifred bank by mail, the defendant company and its agent failed to exercise that degree of care which a reasonably prudent person would have exercised under the circumstances, and are therefore chargeable with negligence. (*Zanos* v. *Great Northern Ry. Co.,* 60 Mont. 17, 198 Pac. 138.)

15. However, it was not enough that plaintiff showed negligence on the part of the payee, but, in addition thereto, if he was to be discharged from liability, and the check considered

as payment by reason of such negligence, it was incumbent upon him to show loss or injury by reason thereof. (Joyce on Defenses to Commercial Paper, 2d ed., sec. 842; 2 Daniels on Negotiable Instruments, 6th ed., sec. 1588.)

As the condition of the Winifred bank remained the same from October 5 to October 10, mere delay did not cause damage to the plaintiff, but it does appear that he was caused loss and injury by the failure of the defendant company and its agent to take such steps as would have resulted in the presentation of the check over the counter of the bank within that time.

16. Again, the check was presented for payment by mail, and [13-15] was then held by the bank on which it was drawn for a period of five days, during which time it was paying all checks presented personally. On the 7th of October the Lewistown bank called the president of the Winifred bank, and demanded that the amount of this check, with others, be remitted, and repeated the demand on the ninth. He learned of the "failing condition" of the bank on the ninth, and thereupon notified the officers of the defendant company, yet neither the defendant company nor its agent bank notified the plaintiff of the failure or refusal of the Winifred bank to pay the check.

On this phase of the case the law is that, if a bank fail to return a check drawn upon it within twenty-four hours as "nonaccepted," it will be deemed to have accepted the same, and the payee is in a position to maintain an action against the bank for the amount thereof. (Secs. 8543, 8544 and 8592, Rev. Codes 1921; *Clarke* v. *National Bank of Montana,* 78 Mont. 48, 252 Pac. 373.) In other words, after the lapse of twenty-four hours, the relation of debtor and creditor arises between the payee and the bank on which the check is drawn, and, conversely, it would seem that such relation, as to the bank and the maker of the check, would be extinguished to the extent of the amount of the check.

17. Again, it is not only the duty of one receiving a check to use due diligence in presenting it for payment, but to use like diligence in notifying the maker of its dishonor if it be not paid, in order that the maker may take steps to protect himself

from loss, and, if this is not done and loss is suffered, the loss must fall upon the payee through whose negligence the loss was occasioned. (5 R. C. L. 515; Joyce on Defenses to Commercial Paper, sec. 844.).

Here the proper officer or agent of the defendant company had ample time in which to make personal demand of the Winifred bank for payment, after the company had knowledge of the precarious condition of the bank, if it did not have such knowledge until notified by the Lewistown bank on October 9, or, had it then notified the maker of nonpayment at that time, he could have gone to the bank and withdrawn the necessary amount while the bank was still paying checks presented at the bank in person, and thus saved himself, or the defendant, from loss; but neither course was pursued, and it must be held that, under all the circumstances of the case, as the maker had sufficient funds in the bank, and the bank had sufficient funds on hand for the payment of the check, the check constituted payment to the defendant company of the amount thereof.

The injunction granted goes no further than to prohibit the foreclosure of the chattel mortgage involved in this action to the extent of the payment thus made upon the mortgage debt.

For the reasons stated the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.