No. 12727

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

ELMER D. HANSON et al.,

Plaintiffs and Respondents,

-vs-

SOUTH SIDE CANAL USERS' ASSOCIATION et al.,

Defendants and Appellants.

Appeal from:   District Court of the Fourteenth Judicial District,
               Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

    For Appellants:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Ben E. Berg, Jr. argued, Bozeman, Montana
        Harrison, Loendorf and Poston, Helena, Montana
        James T. Harrison, Jr. argued, Helena, Montana

    For Respondents:

        Small, Cummins, Hatch and Gregory A. Jackson, Helena,
        Montana
        Floyd O. Small argued and Carl Hatch appeared, Helena,
        Montana

                                Submitted:  April 8, 1975

                                Decided:  JUN 13 1975

Filed:  JUN 13 1975

Thomas J. Kearney
                                                Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by defendants South Side Canal Users' Association and Montana State Water Conservation Board, from a judgment of the district court, Meagher County, adjudicating plaintiffs' rights to waters of the North Fork of the Smith River and awarding each a priority date of April 1, 1915.

The original decree adjudicating waters of the North Fork of the Smith River was rendered by the district court on August 30, 1890. All plaintiffs in the present action, except Elmer Hanson and Howard Zehntner, are successors in interest to the original parties of the initial action and own decreed rights in the North Fork. Other persons having decreed rights in the North Fork have not been joined as parties to this present action.

On October 23, 1935, the Montana State Water Conservation Board filed for record in the office of the clerk and recorder of Meagher County its declaration of intention to store, control and divert

> "All unappropriated waters of North Fork of Smith River and tributaries * * *
>
> "Said waters will be appropriated by means of Storage Reservoir, Located: Meagher County, Sec. 17 & 20, T. 10 N. R. 8."

Within four years of the filing of that notice, the State Water Conservation Board constructed the Sutherland Dam with a capacity of approximately 11,000 acre feet of water. After the construction of the dam and within four years of the filing of its declaration, the State Water Conservation Board also completed the construction of the South Side Canal.

Plaintiffs filed their complaint in the district court on March 6, 1969, and alleged therein:

> "That ever since the making and entering of the afore-mentioned decree and adjudication of water rights, all of the above-named plaintiffs and their predecessors in interest have, in the spring season of each year, been taking and using for beneficial use and purposes and for

irrigation of their lands within the drainage
of said Smith River and its tributaries, sub-
stantial and * * * additional amounts of the
flood or waste waters that normally run and flow down
said stream or streams, over and above their taking
and use of their decreed rights in the normal flow of
said stream or streams; and that such appropriation and
useage of said flood or waste waters by plaintiffs and
their predecessors in interest, have existed and been
continuous, each and every year since the time of the
entry of said aforementioned decree and adjudication;
and that by reason thereof, and through the taking and
use of said flood or waste waters, plaintiffs and their
predecessors in interest, have made and established a
valid appropriation and use of said flood and waste waters,
dating back to a period prior to 1918.

"That pursuant thereto, plaintiffs and their
predecessors in interest have continuously used said
flood or waste waters in addition to their decreed
rights in the normal flow of said stream during the
months of April, May, and June of each year, until the
defendant SOUTH SIDE CANAL USERS' ASSOCIATION interrupted
and interfered with plaintiffs' use thereof during the
past two years * * *.

"* * * and that plaintiffs are accordingly de-
sirous of obtaining herein a supplemental decree of
adjudication of the water rights of said North Fork of
the Smith River and its tributaries, recognizing and
adopting the decreed rights as established and existing
under the aforementioned original adjudication decree of
1890, together with any amendments thereof to the present
time, and further adjudicating and decreeing to the plain-
tiffs herein additional rights in the waters of said
stream or streams in the respective amounts as hereinabove
set forth for each of said plaintiffs * * *.

"* * * and that to the extent and amount of flood
or waste waters required to fill said reservoir, the
plaintiffs herein recognize and accede to the rights of said
Water Conservation Board, but that it is claimed and
sought by plaintiffs herein to assert and establish their
respective rights to any and all waste or flood waters in
or upon said streams each year that are not required for
the filling of said reservoir, and which would normally
otherwise be lost to any present beneficial use * * *.

"* * * but that during the past two (2) years,
said defendant South Side Canal Users' Association, has
also, and in addition to the purchased storage waters
from said reservoir, diverted and assumed to convey through
said ditch and canal, large quantities of flood or waste
waters from the said North Fork of the Smith River and
its tributaries, which are waste or flood waters of said
stream or streams, over and above the amounts thereof re-
quired for the purposes of the Montana State Water Con-
servation Board and its reservoir hereinabove mentioned.
* * *

"That the diversion by said defendant, South Side
Canal Users' Association, of said waste or flood waters from
said stream was and is in derogation of the rights of
each and all of the plaintiffs herein to the use of said
waters * * *.

- 3 -

"That such diversion and interference of said flood or waste waters by said defendant South Side Canal Users' Association, is without right, and contrary to the rights of the plaintiffs and each of them hereinabove named by virtue of the fact that, as hereinabove set forth, said plaintiffs and their respective predecessors in interest, have heretofore appropriated and established their respective rights to the amounts of said flood or waste waters in the amounts hereinabove stated, and have used and made beneficial use of such waters continuously for a period dating back prior to the year 1918, and that said plaintiffs, and each of them, are entitled as against said defendant South Side Canal Users' Association, to a decree adjudicating the rights of said plaintiffs, and each of them, to prior rights in and to the waters and flood waters of said North Fork of the Smith River and its tributaries, over and above any decreed rights that said plaintiffs, or any of them, or any other persons, may now have in the use of the normal flow of said stream or streams * * *."

Trial commenced October 13, 1970, but was continued until April 16, 1973, while the parties attempted to settle their differences among themselves. In its findings of fact Nos. XIV and XV, the district court found that plaintiffs, or their predecessors in interest, made valid and complete appropriations of the waters of the North Fork of the Smith River, in addition to their rights under the 1890 decree; that the exact date of any one of such appropriations was not shown but it was clear that none of the appropriations was later than the year 1915. He therefore awarded all plaintiffs additional water rights in various quantities, each with an equal priority date of April 1, 1915.

Several issues were raised by defendant South Side Canal Users' Association in its appeal. While the Montana State Water Conservation Board filed a brief and argued orally, it did not file any notice of appeal. We need discuss only one issue: Whether the evidence was sufficient to support the findings of fact and conclusions of law entered by the district court? We hold the evidence does not support a finding that any of the plaintiffs made a valid additional appropriation as of 1915 or at any time prior to 1921.

Although numerous witnesses, including members of the South Side Canal Users' Association, testified that they used as much flood water as was available in the spring; that they had done so for as long as they could remember; and, that the flood waters were beneficial to their crops; the testimony of only three witnesses bore even remotely on events prior to the year 1921.

Billy Smith was born in 1903 and had lived in White Sulphur Springs all his life. In 1915, he would have been 12 years of age. He testified that the decreed users had been using considerable amounts of flood waters ever since he could remember. However the earliest specific date which is mentioned in his testimony is 1925, when he started working for the Castle Mountain Ranch.

Louis Jefferson testified that he had worked on the Holmstrom ranch since 1918 and started irrigating "in the early 20's". He then testified that the ranchers in the area had been using the flood waters "ever since that time". That latter testimony related as much to "the early 20's" as it did to 1918. He testified the Holmstrom ranch had been using the flood waters "for the past 50 [years] that I know of." Fifty years prior to the testimony of Louis Jefferson would have been 1923.

Gertrude McStravick testified that she could "remember quite clearly what happened around 1913, '14." She stated she was sure that her granduncle always used the flood waters, "Otherwise he couldn't have grown the hay he did." She stated that she "rode around the ranch in his buggy with him and it was always very wet." However, her testimony made no distinction between flood water and decreed water. Further, on cross-examination, she admitted that she did not know the capacity of the ditches as far back as 1913.

The testimony set forth above is the sole testimony in a lengthy transcript bearing on events prior to 1921. It was clearly insufficient to support the award of 11,450 miner's inches of flood waters to the fifteen plaintiffs with a priority date prior to 1921.

Nor have plaintiffs since 1921 acquired any rights in the waters of the North Fork of the Smith River additional to their 1890 decreed rights. In 1921 the legislature enacted Chapter 228, Laws of 1921, which prescribed the method of making an appropriation of the waters of an adjudicated stream. Section 4 of that statute was codified as section 89-829, R.C.M. 1947, repealed 1973. In Anaconda National Bank v. Johnson, 75 Mont. 401, 411, 244 P. 141, this Court held that method of appropriation of the waters of an adjudicated stream exclusive as to appropriations made after the passage of the act. Here, plaintiffs' complaint did not comply with the requirements of section 89-829, as it existed at the time of its filing.

Plaintiffs acknowledge they have not followed the procedure for making appropriations set forth in section 89-829, R.C.M. 1947, but contend, instead, that the statutory procedure is not exclusive. That argument is answered by the holding in Anaconda National Bank. Plaintiffs' complaint will not be construed as the petition called for by section 89-829. The complaint sought the adjudication of rights which plaintiffs alleged had previously vested in them and which were, allegedly, being wrongfully diverted by the South Side Canal Users' Association. It did not purport to obtain for plaintiffs any new water right with a priority date as of the date of filing the complaint.

We do not answer whether plaintiffs could have obtained additional water rights had they complied with section 89-829, R.C.M. 1947, as it then existed; nor whether plaintiffs may appropriate the so-called "flood waters" of the North Fork of the Smith River pursuant to the present Montana Water Use Act, sections 89-865, R.C.M. 1947, et seq.; nor the extent of the state's appropriation should the plaintiffs be successful in making such an appropriation.

We acknowledge here the dissent of District Judge E. Gardner Brownlee, sitting in place of Chief Justice James T. Harrison. First, as we read the record, the south side canal was constructed

within four years of completion of the dam and is not just recently built.

The dissent states that we attempt to interpret the words "unappropriated waters" as meaning waters that had not theretofore been decreed. Far from it. We acknowledge that plaintiffs Hanson and Zehntner do not own "decreed" rights but do have valid appropriations. Of course, many, many, existing water rights have not been "decreed" but they have been appropriated.

The judgment of the district court is reversed.

_Wesley Castles_
Justice

We Concur:

_Frank I. Haswell_

_John Conway Harrison_

_Gene B. Daly_
Justices.

Hon. E. Gardner Brownlee, District Judge, sitting for Chief Justice
James T. Harrison, dissenting:

I dissent.

Prior to 1890 the Plaintiffs' predecessors in interest
dug canals and took the waters of the North Fork of Smith River
and used them for irrigation purposes. On August 30, 1890 the
District Court from Meagher County issued a decree adjudicating
the waters of Smith River; in doing so the District Court followed
the customary practice of awarding about one inch per acre of
irrigated land. This practice took into consideration the fact
that the adjudications were actually applicable only at times
when the water supply was short and the court was attempting to
spread the available water among as many landowers as possible.
There is no doubt that after 1890 the water users on the North
Fork of Smith River, and in fact the water users on all of
Montana's decreed streams, continued to use much more water during
the high water or flood-water season; neither is there any doubt
that such floodwaters were always put to beneficial use.

In 1935 the state of Montana filed a Declaration of
Intent to Store, Divert and Control the unappropriated  waters
of the North Fork of Smith River. Within four years thereafter
the state built a dam and a reservoir capable of holding 11,000
acre feet of water. In the years following the construction
of the dam the state always sold about three-fourths of that
stored water to the Plaintiffs herein, who needed and used that
water on their lands in addition to the waters decreed to them by
the 1890 decree. This fact alone should establish the need by the
Plaintiffs for water in addition to what they were allowed by
the 1890 decree, and should also establish that the floodwaters
had always been needed and put to beneficial use.

Recently the state built a canal to carry floodwaters
from the North Fork of Smith River to an area outside the Smith

- 8 -

River drainage. The state contended they had the right to do this because by their 1935 Declaration of Intent they had acquired ownership to all waters that were not decreed by the 1890 decree. The Plaintiffs thereupon brought this action to prevent the state from removing the floodwaters from the Smith River drainage; the Plaintiffs contended that as far back as 1890 they had appropriated and had acquired a right to the use of the floodwaters, and that the mere filing of a Declaration of Intention by the state in 1935 did not deprive them of their existing rights.

The majority opinion attempts to interpret the words "unappropriated waters" in the state's Declaration of Intent as meaning waters that had not theretofore been decreed to some person. That such was not the legislative intent should be obvious from the existing facts, and is certainly borne out by the recent legislation wherein the State Legislature stated that existing rights should be honored and that decreed rights were only one of the means of ascertaining the existing rights.

The District Court held in favor of the Plaintiffs, and the District Court Judge made some very accurate Findings of Fact and Conclusions of Law and held that the Plaintiffs had existing rights to the floodwaters of the North Fork of Smith River, which existing rights were in excess of the decreed rights which were applicable in the later irrigating season when the water supply was short.

The District Court decree should be affirmed. However, it should be modified in two particulars:

The District Court decree should be modified by granting the state a decreed right to store 11,000 acre feet of floodwaters, which decreed right should be subsequent to the 1890 decreed rights, but prior in time to the Plaintiffs' floodwater rights;

The District Court decree should also be amended by granting to the state of Montana a decreed right to those flood-waters in excess of the floodwater rights granted to the Plaintiffs by the District Court.

_E. Gardner Brownlee_

Hon. E. Gardner Brownlee, District
Judge, sitting for Chief Justice James
T. Harrison.

- 10 -