ANACONDA NATIONAL BANK, APPELLANT, *v.* JOHNSON
ET AL., RESPONDENTS.

(No. 5,770.)

(Submitted February 8, 1926. Decided February 18, 1926.)

[244 Pac. 141.]

*Water Rights — Appropriation from Adjudicated Stream —
Statute—Method Exclusive—Completion of Work of Con-
struction—Lack of Diligence—Loss of Right—Doctrine of
Relation Back—When Inapplicable—Findings.*

Water Rights—Appropriation—Work of Construction—Lack of Diligence
—Loss of Right.
1. Where an appropriator of water from an adjudicated stream,
disclaiming any right to the use of its normal flow but relying upon
an alleged notice of appropriation made in 1917 of surplus and
flood waters in a lake (formed by the widening of the channel of
the stream) impounded by means of a dam, did nothing by way
of construction of a dam or a ditch until the latter part of 1921,
he did not acquire any right under the appropriation, having failed
to proceed with the diligence required by either section 4848, Re-
vised Codes of 1907, referring to appropriations of water generally,
or section 4871, with relation to appropriations from an adjudicated
stream, in completing his appropriation.

Same—Doctrine of Relation Back—When Inapplicable.
2. An appropriator who fails to complete his appropriation with
diligence, loses the right of relation back, and if he thereafter
completes his work of construction and makes a beneficial use of
the water, his right will bear date of the completed appropriation.

Same—Appropriation from Adjudicated Stream—Method Prescribed by
Statute Exclusive.
3. *Held,* that the method prescribed by sections 7119–7127, Revised
Codes of 1921, comprising Chapter 228, Laws of 1921, for making
an appropriation of the waters of an adjudicated stream, is ex-
clusive as to appropriations made after the passage of that Act.

75 Mont.—26

Same—Findings—When Conclusive.
4. The findings of the court in a water right suit supported by substantial evidence will not be disturbed on appeal.

[1] Waters, 40 Cyc., p. 711, n. 63, p. 721, n. 24.
[2] Waters, 40 Cyc., p. 721, n. 24.
[3] Waters, 40 Cyc., p. 713, n. 72.
[4] Appeal and Error, 4 C. J., sec. 2853, p. 878, n. 82.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by the Anaconda National Bank against E. P. Johnson and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Keeley & Keeley,* for Appellant, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

Flood waters may be appropriated, turned into a stream and reclaimed. (Secs. 7093 and 7096, Rev. Codes 1921; *Jeffers* v. *Montana Power Co.,* 68 Mont. 114, 217 Pac. 652.) Where a person increases the natural flow of a stream he has the right to the excess. (*Beaverhead Canal Co.* v. *Dillon Electric L. & P. Co.,* 34 Mont. 135, 85 Pac. 880; *Smith* v. *Duff,* 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984; *Spaulding* v. *Stone,* 46 Mont. 483, 129 Pac. 327; *State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112.) While a creek user of the natural flow acquires no title to the *corpus* of the water (*Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059), the rule is different as to impounded waters, and the appropriator owns the *corpus* thereof. (1 Wiel on Water Rights, 3d ed., sec. 52; *Gallatin* v. *Corning Irr. Co.,* 163 Cal. 405, Ann. Cas. 1914A, 74, 126 Pac. 864; *Dannenbrink* v. *Burger,* 23 Cal. App. 587, 138 Pac. 751; *Clemens Horst Co.* v. *New Blue Point Min. Co.,* 177 Cal. 631, 171 Pac. 417; *Elgin* v. *Weatherstone,* 123 Wash. 429, 212 Pac. 562.) And the appropriator thus owning the *corpus* of impounded waters, the same constitute personal property and may be used where, at what time and

in what manner the owner thereof may desire. It is not necessary that the owner of this water use it for irrigation upon his own lands. He may sell such water or give it away. (1 Wiel on Water Rights, 3d ed., secs. 32, 33, 35, 537 and 826.) Indeed, even in the case of a creek right, it is not necessary that the appropriator have land upon which to use the water. (*Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575.) This court has held that a person impounding water may use it for any purpose he may choose to devote it. (*Spaulding* v. *Stone*, 46 Mont. 483, 129 Pac. 327.) All that a creek user is entitled to receive, as against a reservoir user, is sufficient water at the head of his ditch from the normal and natural flow of the creek to supply his water rights when needed. (*Kelley* v. *Granite Bi-Metallic Co.*, 41 Mont. 1, 108 Pac. 785; *Featherman* v. *Hennessy*, 42 Mont. 535, 113 Pac. 751.) Where an artificial increase in the stream is shown, the court should determine the amount of such increase "as definitely as possible" and award it. (*Reno* v. *Richards*, 32 Idaho, 1, 178 Pac. 81.)

The authorities are uniform without a single dissent that either creek or reservoired water may be used in the way appellant has been using it, provided that the rights of others are not interfered with. (*Reno* v. *Richards*, *supra*; *United States* v. *Caldwell*, 63 Utah, 490, 231 Pac. 434; *Spanish Forks City* v. *Irrigation Co.*, 46 Utah, 487, 151 Pac. 46; *Spring Creek Irr. Co.* v. *Zollinger*, 58 Utah, 90, 197 Pac. 737; *City of San Bernardino* v. *City of Riverside*, 186 Cal. 7, 198 Pac. 784; *Kidd* v. *Laird*, 15 Cal. 162, 76 Am. Dec. 472; *Cheda* v. *Southern Pac. Co.*, 22 Cal. 373, 134 Pac. 717; *Miller* v. *Wheeler*, 54 Wash. 429, 23 L. R. A. (n. s.) 1065, 103 Pac. 641.)

*Mr. Ed. Scharnikow, Mr. W. J. Paul* and *Mr. S. P. Wilson,* for Respondents, submitted a brief; *Mr. Paul* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment against plaintiff after its motion for a new trial was denied.

The waters of Dempsey creek in Powell county frequently have been the subject of litigation. It is conceded to be an adjudicated stream within the meaning of the statute. (Sec. 7119, Rev. Codes 1921.)

The principal stream, or south fork, rises near the foot of [1] Mount Powell and thence takes its course for several miles through a mountainous country. Here and there its channel widens out and, extending over a considerable area, forms lakes. So came into being the particular subject of this lawsuit, a body of water called by some Carothers Lake, by others Dempsey Lake No. 1. This lake is in the course of and is part of the stream comprising the south fork of Dempsey creek; it is a mere enlargement of the channel. Upon plaintiff's lands this stream joins another called the north fork.

In prior water suits it has been decreed that there are twenty-two separate rights to the use of the waters of Dempsey creek. Plaintiff's right is No. 20, consisting of 100 inches of water, being diverted from the north fork. Right No. 3, 100 inches, and a portion of right No. 11, probably 40 inches, the property of defendants, also divert from the north fork. The pleadings do not challenge the right of any of these parties to divert the three rights above mentioned to the extent thereof from the north fork. The other rights, aggregating about 2,500 inches, with the exception of one from the south fork, receive their waters from the stream below the confluence of the north and south forks. When the water is low in Dempsey creek there is barely enough to supply the first five rights.

Desiring to secure an adequate supply for plaintiff's lands which lie mainly upon the left bank of the north fork, and which can be irrigated only by water taken from that fork,

Carothers, a predecessor of the plaintiff, conceived the idea of impounding flood and other waters which otherwise would go to waste, in the lake above mentioned; apparently it was his purpose originally to convey the waters so impounded to his lands by a ditch. This is indicated by a notice of appropriation which he filed October 1, 1917, and which is the main basis of plaintiff's cause of action. He gave notice that on the 1st day of October, 1917, he did appropriate and claim 250 cubic feet of the waters of Carothers Lake and "did, on the above named date, mark the point of intended diversion by posting thereat a copy of this notice in a conspicuous place. The said waters are claimed for irrigation and other useful and beneficial purposes and the place of intended use is on the land of the appropriator, commonly known as the Bell farm on Dempsey creek. Said water is to be diverted and conveyed to said place by means of a dam and a ditch, said ditch to be two feet wide on the bottom, four feet wide on top and three feet deep. That the stream from which the diversion is to be made is more particularly described as follows, to-wit: all of that water that can be reservoired in the said lake by a dam approximately seven feet high and nine feet wide," following which is a general description of the location of the lake and the point of diversion.

In the complaint it is alleged that on or about the 1st day of October, 1917, a predecessor in interest of plaintiff appropriated of the waters of Carothers Lake an amount equivalent to a continuous flow of 250 inches during the entire irrigating season of each year for the purpose of storing, reservoiring, conserving and impounding certain flood waters arising from melting snows, spring freshets and heavy rains, for the purpose of using such waters upon the lands then owned by plaintiff's predecessor in interest, and now owned by the plaintiff. It is then alleged that by means of certain dams and headgates, works and improvements, plaintiff and its predecessor in interest so prepared the lake that there could be stored therein water to the average depth of six

feet over the entire surface of the lake above the natural level of the waters thereof. And later it is alleged, inferentially at least, that after the completion of the lake as a reservoir in the fall of 1917, the plaintiff and its predecessors in interest conserved and impounded therein such flood and surplus waters to the full extent of the storage capacity of the lake. Later on it is alleged that after such waters were so impounded and conserved, during each year from and after the fall of the year 1917, the waters have been used for irrigation of certain lands belonging to the plaintiff and its predecessors in interest. In the complaint the plaintiff disclaimed any right to the use of the normal flow of Dempsey creek as against prior appropriators or users of the waters of the stream when the normal flow of the creek is needed by such appropriators and users; averred that the plaintiff has used and now uses only such waters as have been so impounded and conserved, except during such times of the year as the normal flow of the stream is not needed by prior appropriators or others. The foregoing allegations, except as to the plaintiff's disclaimer mentioned above, were put in issue by answer.

The court found against the plaintiff upon all its essential allegations and found specifically that "neither the plaintiff nor its predecessors in interest ever, at any time, appropriated the waters of Carothers Lake, sometimes called Dempsey Lake No. 1, for the purpose of storing, reservoiring, or conserving or impounding" any water; that neither the plaintiff nor its predecessors in interest by means of dams, headgates or works or improvements, or otherwise, prepared the lake so that there should be stored therein any water; that neither the plaintiff nor its predecessors in interest ever used upon its lands, or for any useful or beneficial purpose, any of the waters of Carothers Lake, impounded or otherwise.

It is admitted that the plaintiff, or its predecessors in interest, did not attempt to comply with the statutes which were in force on October 1, 1917, respecting the appropriation

of water from adjudicated streams, nor of the provisions of section 7119 and subsequent sections of the Revised Codes of 1921.

Neither the plaintiff nor its predecessors in interest ever dug a ditch leading from the lake or the south fork of Dempsey creek to plaintiff's lands. By reason of a mountainous ridge between the north and south forks it is doubtful whether a ditch can be constructed within the limits of reasonable expenditure which will convey waters impounded in the lake to the head of plaintiff's north fork ditch. Plaintiff's predecessors seem to have given up that part of the project. Instead they adopted a different course. They assumed the right to take water sufficient for their needs from the north fork and to turn into the south fork from the lake an equivalent amount of water, plus an amount added to make up for seepage and evaporation, upon the theory that by taking the waters of the north fork no one could be injured except those diverting water from Dempsey creek below the confluence of the forks. If the foregoing premises were correct and the plaintiff had rightfully impounded water in the lake there could not be any valid objection to plaintiff's course. Indeed, a practice of that character, under restrictions insuring that the rights of others should be fully protected might well be encouraged. It is to the interest of the public that water be conserved for use rather than be permitted to go to waste, to the end that the arid lands of the state may be put under irrigation and thus be made productive.

But the premise is found wanting in substance. The court's finding that neither the plaintiff nor its predecessors in interest made an appropriation must be sustained. On this feature of the case the facts are that persons whom the defendants claim were their predecessors in interest built a dam at the lower end of the lake in 1901 for the purpose of impounding the flood waters of the stream. Whether the defendants can trace title to the dam from its builders is

not now important.  There is evidence showing that the de-
fendants, or some of them, at various times from 1903 to 1921,
repaired the dam and the headgate therein to some extent
for the purpose of retaining water in the lake at its natural
level during the irrigating season, thus "augmenting the supply
of water in said Dempsey creek for the benefit of all the
decreed rights using water out of said creek"; this for the
purpose of keeping "as much water up at the headwaters
of Dempsey creek as possible and that the Dempsey creek
users might have the benefit of all the additional seepage,
surplus and drainage water made possible by such use of
said lake," in the language of the trial court.  This is im-
portant to the instant question only to show that a dam ex-
isted there when Carothers posted his notice.

Assuming now that Carothers had the right to appropriate
the flood and surplus waters of the south fork of Dempsey
creek by the method he chose (and here it is presumed that
his notice of appropriation was filed pursuant to the pro-
visions of section 4847, R. C. 1907) and that it was not
incumbent upon him to follow the requirements of Chapter
185 of the Laws enacted by the Tenth Legislative Assembly
(Session Laws of 1907, p. 489, secs. 4871 to 4880, Rev. Codes
1907), "An Act to regulate the appropriation of water in
streams in which the rights therein have been adjudicated,"
it is clear that he did not prosecute the construction of the
work with reasonable diligence to completion, as required by
section 4848, Rev. Codes 1907.  Practically the same require-
ment is made in section 4871, R. C. 1907, wherein it is
provided that after posting his notice "the work in the con-
struction and completion of the means of diverting and con-
verting the water to the place of use shall be prosecuted with
reasonable diligence, otherwise no rights shall be acquired by
such appropriator."  Carothers during the year 1918 did no
more than to repair to a small extent the dam then existing.
No work of any substantial character was done upon the dam

until September, 1921. Prior to that not by any stretch of the facts can it be said that he carried on the work of constructing a dam; and certainly he did not do anything with respect to constructing the ditch mentioned in his notice of appropriation. Whether the work done in September, 1921, may be considered as amounting to the construction of a dam need not be determined.

The fact that the lake, beginning with some time in 1905, was within a National Forest and that Carothers had obtained a permit from the forest supervisor, "subject to all valid claims," to impound water in this lake, and that it was provided in the permit that construction work should begin within twelve months and be completed within two years from the date of the permit, even though the time was extended by the supervisor, does not alter the instant situation. As a matter of fact no improvements had been made on October 13, 1920, and the forest supervisor gave Carothers until the following spring to commence his improvements. On August 16, 1921, the supervisor wrote Carothers that a report received in his office showed that as yet no work had been done on the project, and gave him until September 30, 1921, to complete his improvements. Whether the method provided by Chapter 185 of the Laws of 1907 for the appropriation of water from an adjudicated stream was intended to be exclusive is not necessary to this decision, and the question is reserved. It is clear that Carothers had not made an appropriation of any of the waters of the south fork of Dempsey creek when the Seventeenth Legislative Assembly enacted Chapter 228, approved March 15, 1921 (Session Laws of 1921, p. 487, secs. 7119 to 7127, Rev. Codes 1921) which will be referred to later.

Carothers then did not have any valid subsisting right to impound water in the lake. He did not possess a completed appropriation. We may go further and say he then did not have even an inchoate appropriation. He had set out to make an appropriation based upon the notice filed by him October

1, 1917, but had not complied with the provisions of the statute, and upon the facts his notice at that time, 1921, was as ineffectual as if it had never been. As he did not proceed with his construction with reasonable diligence he lost the right of relation back. That right being lost, if he had then [2] completed his work and made a beneficial use of the water his right would be held to bear the date of the completed appropriation. (*Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451.)

Section 4 of the 1921 Act (7119, R. C. 1921) provides [3] that any person thereafter desiring to appropriate the waters of a river or stream, ravine, coulee, spring, lake or other natural source of supply, concerning which there has been an adjudication of rights between appropriators or claimants as contemplated in section 7128, R. C. 1921, shall pursue a course which the statute designates. Carothers had not done anything to keep alive the appropriation which he attempted to initiate on October 1, 1917, and he had not acquired any rights thereunder. As the appropriation he was attempting to make had to do with the waters of an adjudicated stream, after the passage of the 1921 law it was incumbent upon him to comply with its provisions if he would acquire a right to the waters of Dempsey creek. The statutes of 1907 and 1921 relating to the appropriation of water from adjudicated streams were designed to compel those who sought to appropriate water from such streams to become bound, as are parties and privies thereto, by all of the provisions of the decree or decrees by which the rights of the parties thereto had been determined. Experience had shown that after the rights of all of the parties taking water from a stream had been adjudicated, a subsequent appropriator would appear upon the scene, tap the stream and ruthlessly take the water, disregarding the decreed rights and flaunting the orders of the commissioner appointed by the court to distribute the water according to the terms of the decree. The only remedy the prior appropriators had was to commence a suit against the

new appropriator, the result being that all of the rights of the stream had again to be adjudicated; and after that decree was entered if another subsequent appropriator took the water the same process had to be gone over again. Unquestionably the legislature of 1921 intended that an appropriation of the waters of an adjudicated stream should not be made thereafter without a substantial compliance with the requirements of the statute then enacted. The method prescribed must be held to be exclusive.

One ground for the court's decision against the right claimed by plaintiff was that there had not been a compliance with the 1921 law. The court found that there had not been a completed appropriation. These rulings were correct. The court found also that neither the plaintiff nor its predecessors in interest had made a beneficial use of the water which actually was impounded. There is substantial evidence in the [4] record to sustain this finding and we shall not disturb it. (*Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71.)

The court held that the plaintiff should not prevail for another reason. It was contended that the plaintiff did not injure anyone by taking the waters of the north fork on the ground that the only water users who could be injured were those diverting water from the main stream below the forks. The court, however, found as a fact and there is ample evidence to support the finding, that when plaintiff's predecessors took water from the north fork they frequently took away from the owners of rights 3 and 11 water which the latter were entitled to use through those ditches, and it is conceded that none of the waters of the lake ever were supplied to the north fork. The court therefore decided that plaintiff's conduct in taking the waters of the north fork was injurious to prior appropriators who were entitled to the use of the .same.

In view of what has been said we do not find it necessary to discuss any of the other propositions advanced by

plaintiff's counsel. We deem them without merit upon the record.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.

Rehearing denied March 12, 1926.