ELMER D. HANSON et al., Plaintiffs and Respondents, *v.* SOUTH SIDE CANAL USERS' ASSOCIATION et al., Defendants and Appellants.

No. 12727.
Submitted April 8, 1975.
Decided June 13, 1975.
537 P.2d 325.

The HONORABLE E. GARDNER BROWNLEE, District Judge, sitting for MR. CHIEF JUSTICE JAMES T. HARRISON, filed dissenting opinion.

Berg, Angel, Andriolo & Morgan, Bozeman, Ben E. Berg, Jr. (argued), Bozeman, Harrison, Loendorf & Poston, Helena, James T. Harrison, Jr. (argued), Helena, for defendants and appellants.

Small, Cummins & Hatch, and Gregory A. Jackson, Helena, Floyd O. Small (argued), Helena, for plaintiffs and respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by defendants South Side Canal Users' Association and Montana State Water Conservation Board, from a judgment of the district court, Meagher County, adjudicating plaintiffs' rights to waters of the North Fork of the Smith River and awarding each a priority date of April 1, 1915.

The original decree adjudicating waters of the North Fork of the Smith River was rendered by the district court on August 30, 1890. All plaintiffs in the present action, except Elmer Hanson and Howard Zehntner, are successors in interest to the original parties of the initial action and own decreed rights in the North Fork. Other persons having decreed rights in the North Fork have not been joined as parties to this present action.

On October 23, 1935, the Montana State Water Conservation Board filed for record in the office of the clerk and recorder of Meagher County its declaration of intention to store, control and divert

"All unappropriated waters of North Fork of Smith River and tributaries * * *

"Said waters will be appropriated by means of Storage Reservoir, Located: Meagher County, Sec. 17 & 20, T. 10 N.R. 8."

Within four years of the filing of that notice, the State Water Conservation Board constructed the Sutherland Dam with a capacity of approximately 11,000 acre feet of water. After the construction of the dam and within four years of the

filing of its declaration, the State Water Conservation Board also completed the construction of the South Side Canal.

Plaintiffs filed their complaint in the district court on March 6, 1969, and alleged therein:

"That ever since the making and entering of the aforementioned decree and adjudication of water rights, all of the above-named plaintiffs and their predecessors in interest have, in the spring season of each year, been taking and using for beneficial use and purposes and for irrigation of their lands within the drainage of said Smith River and its tributaries, substantial and * * * additional amounts of the flood or waste waters that normally run and flow down said stream or streams, over and above their taking and use of their decreed rights in the normal flow of said stream or streams; and that such appropriation and useage of said flood or waste waters by plaintiffs and their predecessors in interest, have existed and been continuous, each and every year since the time of the entry of said aforementioned decree and adjudication; and that by reason thereof, and through the taking and use of said flood or waste waters, plaintiffs and their predecessors in interest, have made and established a valid appropriation and use of said flood and waste waters, dating back to a period prior to 1918.

"That pursuant thereto, plaintiffs and their predecessors in interest have continuously used said flood or waste waters in addition to their decreed rights in the normal flow of said stream during the months of April, May, and June of each year, until the defendant SOUTH SIDE CANAL USERS' ASSOCIATION interrupted and interfered with plaintiffs' use thereof during the past two years * * *.

"* * * and that plaintiffs are accordingly desirous of obtaining herein a supplemental decree of adjudication of the water rights of said North Fork of the Smith River and its tributaries, recognizing and adopting the decreed rights as established and existing under the aforementioned original

adjudication decree of 1890, together with any amendments thereof to the present time, and further adjudicating and decreeing to the plaintiffs herein additional rights in the waters of said stream or streams in the respective amounts as hereinabove set forth for each of said plaintiffs * * *.

"* * * and that to the extent and amount of flood or waste waters required to fill said reservoir, the plaintiffs herein recognize and accede to the rights of said Water Conservation Board, but that it is claimed and sought by plaintiffs herein to assert and establish their respective rights to any and all waste or flood waters in or upon said streams each year that are not required for the filling of said reservoir, and which would normally otherwise be lost to any present beneficial use * * *.

"* * * but that during the past two (2) years, said defendants South Side Canal Users' Association, has also, and in addition to the purchased storage waters from said reservoir, diverted and assumed to convey through said ditch and canal, large quantities of flood or waste waters from the said North Fork of the Smith River and its tributaries, which are waste or flood waters of said stream or streams, over and above the amounts thereof required for the purposes of the Montana State Water Conservation Board and its reservoir hereinabove mentioned. * * *

"That the diversion by said defendant South Side Canal Users' Association, of said waste or flood waters from said stream was and is in derogation of the rights of each and all of the plaintiffs herein to the use of said water * * *.

"That such diversion and interference of said flood or waste waters by said defendant South Side Canal Users' Association, is without right, and contrary to the rights of the plaintiffs and each of them hereinabove named by virtue of the fact that, as hereinabove set forth, said plaintiffs and their respective predecessors in interest, have heretofore appropriated and established their respective rights to the amounts of said flood

or waste waters in the amounts hereinabove stated, and have used and made beneficial use of such waters continuously for a period dating back prior to the year 1918, and that said plaintiffs, and each of them, are entitled as against said defendant South Side Canal Users' Association, to a decree adjudicating the rights of said plaintiffs, and each of them, to prior rights in and to the waters and flood waters of said North Fork of the Smith River and its tributaries, over and above any decreed rights that said plaintiffs, or any of them, or any other persons, may now have in the use of the normal flow of said stream or streams * * *."

Trial commenced October 13, 1970, but was continued until April 16, 1973, while the parties attempted to settle their differences among themselves. In its findings of fact Nos. XIV and XV, the district court found that plaintiffs, or their predecessors in interest, made valid and complete appropriations of the waters of the North Fork of the Smith River, in addition to their rights under the 1890 decree; that the exact date of any one of such appropriations was not shown but it was clear that none of the appropriations was later than the year 1915. He therefore awarded all plaintiffs additional water rights in various quantities, each with an equal priority date of April 1, 1915.

Several issues were raised by defendant South Side Canal Users' Association in its appeal. While the Montana State Water Conservation Board filed a brief and argued orally, it did not file any notice of appeal. We need discuss only one issue: Whether the evidence was sufficient to support the findings of fact and conclusions of law entered by the district court? We hold the evidence does not support a finding that any of the plaintiffs made a valid additional appropriation as of 1915 or at any time prior to 1921.

Although numerous witness, including members of the South Side Canal Users' Association, testified that they used as much flood water as was available in the spring; that they

had done so for as long as they could remember; and, that the flood waters were beneficial to their crops; the testimony of only three witnesses bore even remotely on events prior to the year 1921.

Billy Smith was born in 1903 and had lived in White Sulphur Springs all his life. In 1915, he would have been 12 years of age. He testified that the decreed users had been using considerable amounts of flood waters ever since he could remember. However the earliest specific date which is mentioned in his testimony is 1925, when he started working for the Castle Mountain Ranch.

Louis Jefferson testified that he had worked on the Holmstrom ranch since 1918 and started irrigating "in the early 20's". He then testified that the ranchers in the area had been using the flood waters "ever since that time". That latter testimony related as much to "the early 20's" as it did to 1918. He testified the Holmstrom ranch had been using the flood waters "for the past 50 [years] that I know of." Fifty years prior to the testimony of Louis Jefferson would have been 1923.

Gertrude McStravick testified that she could "remember quite clearly what happened around 1913, '14." She stated she was sure that her granduncle always used the flood waters, "Otherwise he couldn't have grown the hay he did." She stated that she "rode around the ranch in his buggy with him and it was always very wet." However, her testimony made no distinction between flood water and decreed water. Further, on cross-examination, she admitted that she did not know the capacity of the ditches as far back as 1913.

The testimony set forth above is the sole testimony in a lengthy transcript bearing on events prior to 1921. It was clearly insufficient to support the award of 11,450 miner's inches of flood waters to the fifteen plaintiffs with a priority date prior to 1921.

Nor have plaintiffs since 1921 acquired any rights in the waters of the North Fork of the Smith River additional

to their 1890 decreed rights. In 1921 the legislature enacted Chapter 228, Laws of 1921, which prescribed the method of making an appropriation of the waters of an adjudicated stream. Section 4 of that statute was codified as section 89-829, R.C.M.1947, repealed 1973. In Anaconda National Bank v. Johnson, 75 Mont. 401, 411, 244 P. 141, this Court held that method of appropriation of the waters of an adjudicated stream exclusive as to appropriations made after the passage of the act. Here, plaintiffs' complaint did not comply with the requirements of section 89-829, as it existed at the time of its filing.

Plaintiffs acknowledge they have not followed the procedure for making appropriations set forth in section 89-829, R.C.M.1947, but contend, instead, that the statutory procedure is not exclusive. That argument is answered by the holding in *Anaconda National Bank*. Plaintiffs' complaint will not be construed as the petition called for by section 89-829. The complaint sought the adjudication of rights which plaintiffs alleged had previously vested in them and which were, allegedly, being wrongfully diverted by the South Side Canal Users' Association. It did not purport to obtain for plaintiffs any *new* water right with a priority date as of the date of filing the complaint.

We do not answer whether plaintiffs could have obtained additional water rights had they complied with section 89-829, R.C.M.1947, as it then existed; nor whether plaintiffs may appropriate the so-called "flood waters" of the North Fork of the Smith River pursuant to the present Montana Water Use Act, sections 89-865 et seq., R.C.M.1947; nor the extent of the state's appropriation should the plaintiffs be successful in making such an appropriation.

We acknowledge here the dissent of District Judge E. Gardner Brownlee, sitting in place of Chief Justice James T. Harrison. First, as we read the record, the south side canal was constructed within four years of completion of the dam and is not just recently built.

The dissent states that we attempt to interpret the words "unappropriated waters" as meaning waters that had not theretofore been decreed. Far from it. We acknowledge that plaintiffs Hanson and Zehntner do not own "decreed" rights but do have valid appropriations. Of course, many, many, existing water rights have not been "decreed" *but* they have been appropriated.

The judgment of the district court is reversed.

MR. JUSTICES JOHN C. HARRISON, HASWELL and DALY, concur.

THE HONORABLE E. GARDNER BROWNLEE, District Judge, sitting for MR. CHIEF JUSTICE JAMES T. HARRISON, (dissenting).

I dissent.

Prior to 1890 the Plaintiffs' predecessors in interest dug canals and took the waters of the North Fork of Smith River and used them for irrigation purposes. On August 30, 1890 the District Court from Meagher County issued a decree adjudicating the waters of Smith River; in doing so the District Court followed the customary practice of awarding about one inch per acre of irrigated land. This practice took into consideration the fact that the adjudications were actually applicable only at times when the water supply was short and the court was attempting to spread the available water among as many landowners as possible. There is no doubt that after 1890 the water users on the North Fork of Smith River, and in fact the water users on all of Montana's decreed streams, continued to use much more water during the high water or flood-water season; neither is there any doubt that such floodwaters were always put to beneficial use.

In 1935 the state of Montana filed a Declaration of Intent to Store, Divert and Control the *unappropriated* waters of the North Fork of Smith River. Within four years thereafter the state built a dam and a reservoir capable of holding 11,000

acre feet of water. In the years following the construction of the dam the state always sold about three-fourths of that stored water to the Plaintiffs herein, who needed and used that water on their lands in addition to the waters decreed to them by the 1890 decree. This fact alone should establish the need by the Plaintiffs for water in addition to what they were allowed by the 1890 decree, and should also establish that the flood-waters had always been needed and put to beneficial use.

Recently the state built a canal to carry floodwaters from the North Fork of Smith River to an area outside the Smith River drainage. The state contended they had the right to do this because by their 1935 Declaration of Intent they had acquired ownership to all waters that were not decreed by the 1890 decree. The Plaintiffs thereupon brought this action to prevent the state from removing the floodwaters from the Smith River drainage; the Plaintiffs contended that as far back as 1890 they had appropriated and had acquired a right to the use of the floodwaters, and that the mere filing of a Declaration of Intention by the state in 1935 did not deprive them of their existing rights.

The majority opinion attempts to interpret the words "un-appropriated waters" in the state's Declaration of Intent as meaning waters that had not theretofore been decreed to some person. That such was not the legislative intent should be obvious from the existing facts, and is certainly borne out by the recent legislation wherein the State Legislature stated that existing rights should be honored and that decreed rights were only one of the means of ascertaining the existing rights.

The District Court held in favor of the Plaintiffs, and the District Court Judge made some very accurate Findings of Fact and Conclusions of Law and held that the Plaintiffs had existing rights to the floodwaters of the North Fork of Smith River, which existing rights were in excess of the decreed rights which were applicable in the later irrigating season when the water supply was short.

The District Court decree should be affirmed. However, it should be modified in two particulars:

The District Court decree should be modified by granting the state a decreed right to store 11,000 acre feet of floodwaters, which decreed right should be subsequent to the 1890 decreed rights, but prior in time to the Plaintiffs' floodwater rights;

The District Court decree should also be amended by granting to the state of Montana a decreed right to those floodwaters in excess of the floodwater rights granted to the Plaintiffs by the District Court.