No. 13261

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

WILLIAM LUPPOLD,

Plaintiff and Respondent,

-vs-

LEN LEWIS et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Fourteenth Judicial
              District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Patrick F. Hooks appeared, Townsend, Montana
Loble, Picotte and Pauly, Helena, Montana
Bruce Loble argued and Henry Loble argued, Helena,
Montana

For Respondent: .

John V. Potter, Jr. argued, White Sulphur Springs,
Montana
Moore and Rice, Bozeman, Montana
Perry J. Moore argued, Bozeman, Montana

---

Submitted:  January 18, 1977

Decided: APR 13 1977

Filed: APR 13 1977

Thomas J. Kearney
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from findings of fact and conclusions of law of the district court, Meagher County, interpreting an 1890 water rights decree, pursuant to section 89-1015, R.C.M. 1947. This cause is entitled with the names of the parties to the original action, whereas the actual parties to this appeal are Gertrude McStravick and Fred Buckingham, as respondents, and Ward Paper Box Company, as appellant. Appellant's and respondents' predecessors in interest were parties to the 1890 adjudication, wherein they received the following rights:

| Party | Priority of Right | Total Inches |
|---|---|---|
| McStravick | 1 | 60 |
| Buckingham | 20, 21 | 500 |
| Ward Paper Box Co. | 9, 10, 11, 15, 18 24, 26, 28, 29 | 1,035 |

During the 1973 irrigation season a controversy arose between respondents and appellant as to whether Four Mile Creek was adjudged in the 1890 decree in question. Respondents contend that Four Mile Creek was adjudged in the 1890 decree, specifically appellant's water right 29. Appellant, on the other hand, claimed Four Mile Creek was not adjudged in the 1890 decree, but only the North Fork of the Smith River and those tributaries specified in the decree, and the water commissioner appointed to administer the decree had no authority on Four Mile Creek. Consequently, the water commissioner did not administer the waters of Four Mile Creek during the 1973 irrigation season.

It is agreed the 1890 decree was an adjudication of the North Fork of the Smith River. However, the decree referred to "waters of the Smith River", "water of the North Fork of Smith River", and "waters of" certain named tributaries of the North Fork of the Smith River.

The North Fork of Smith River is that portion of the Smith River which lies entirely within the present boundaries

of Meagher County from its headwaters to its confluence with the South Fork of Smith River in Section 21, Township 9 North, Range 6 East, M.P.M., Meagher County. Four Mile Creek is a stream located in Meagher County which flows into the North Fork of Smith River in the spring of the year when the waters are unimpeded and uninterrupted.

On April 23, 1974, respondents filed a petition for clarification of water right decree. This was subsequently dismissed, without prejudice, for failure to join the Montana Department of Natural Resources and Conservation as a party and serve notice thereon, as required by section 89-896(4), R.C.M. 1947. On June 25, 1974, respondents filed a petition and complaint of dissatisfied water users. The district court, sitting without a jury, found Four Mile Creek was adjudged in the 1890 decree. The water commissioner was instructed to administer and distribute the water of Four Mile Creek in accordance with the 1890 decree during those times of the year that such waters would, if uninterrupted and unimpeded, reach the North Fork of Smith River and contribute to its flow.

When reviewing findings of fact and conclusions of law of a district court, sitting without a jury, this Court has repeatedly held such findings and conclusions will not be disturbed if supported by substantial evidence and by the law. Compton v. Alcorn, ____Mont.____, 557 P.2d 292, 33 St. Rep. 1186 (1976); Brady v. State Highway Comm'n, 163 Mont. 416, 517 P.2d 738; Timmerman v. Gabriel, 155 Mont. 294, 470 P.2d 528; Wash. Water Power Co. v. Morgan Electric Co., 152 Mont. 126, 448 P.2d 683. When reviewing evidence it will be viewed in the light most favorable to the prevailing party in the district court, and the credibility of witnesses and the weight assigned to their testimony is for the determination of the district court in a nonjury trial. Johnson v. Johnson, ____Mont.____, ____P.2d____, 34 St.Rep. 101;

- 3 -

Hellickson v. Barrett Mobile Home Transp., 161 Mont. 455, 507

P.2d 523; Strong v. Williams, 154 Mont. 65, 460 P.2d 90; Eliason

v. Eliason, 151 Mont. 409, 443 P.2d 884.

Appellant's fifteen specifications of error fall into

three general categories: (1) Procedural issues. (2) Substan-

tive issues relating to the jurisdiction of the district court

pursuant to section 89-1015, R.C.M. 1947. And, (3) Substantive

issues not related to the jurisdictional question.

1. The first procedural issue is whether respondents

had standing to pursue an action under section 89-1015. Appel-

lant contends that neither respondent had standing, since the

water commissioner's 1973 records reported (1) McStravick received

all of her decreed water, (2) Buckingham did not show a beneficial

need and use for the additional water he was entitled to, and

(3) neither respondent sought additional water from upstream

users, allegedly receiving excess water.

Section 89-1015, R.C.M. 1947, states, in part:

"Any person owning or using any of the waters of
such stream or ditch or extension of ditch, who
is dissatisfied with the method of distribution
of the waters of such stream or ditch by such
water commissioner or water commissioners, and
who claims to be entitled to more water than he
is receiving, or is entitled to a right prior to
that allowed him by such water commissioner or
water commissioners, may file his written complaint,
duly verified, setting forth the facts of such
claim. * * *"  (Emphasis supplied.)

A careful reading indicates there are two means to achieve

standing: First the user is dissatisfied with the method of

distribution by the water commissioner and claims to be entitled

to more water than he is receiving, or second the user is dis-

satisfied with the method of distribution by the water commis-

sioner and is entitled to a right prior to that allowed him by

such water commissioner.

The district court found the first to be controlling in

- 4 -

finding the respondents did not receive the amount of water they were entitled to under the 1890 decree during the 1973 irrigating season. There is substantial evidence in the record to support this finding and it will not be disturbed on appeal.

Respondent McStravick repeatedly testified she was dissatisfied with the distribution of water during the 1973 season, that this dissatisfaction was the extreme shortage of water which caused a reduction in the hay crop as compared to previous years. Elmer Hanson, a leaseholder of McStravick, testified water was very low and only intermittently available during 1973; and that this condition was present during the months of May and June, when Four Mile Creek would reach the North Fork of Smith River if uninterrupted and unimpeded. Rick Buckingham testified the water was low in 1973 and he was present when his father confronted the water commissioner about this shortage.

The district court was presented with conflicting testimony. The water commissioner's records, which are the basis for payment of his services, reflected that respondents received their decreed water. Respondents and Elmer Hanson on the other hand disputed these records, as can clearly be noted from Hanson's testimony he believed the records to be incorrect. The weight assigned to testimony is for the district court's determination, and such will not be disturbed on appeal.

The next procedural issue is whether the district court failed to direct notice to be given to all necessary parties. Appellant relies on State ex rel. McKnight vs. District Court, 111 Mont. 520, 111 P.2d 292, for the proposition that all users and owners under the prior decree must be given notice. We do not agree. If such were the case, section 89-1015, R.C.M. 1947, would have so stated. Section 89-1015 states, in part:

> " * * * Thereupon the judge shall fix a time for
> the hearing of such petition, and shall direct

> that such notice be given to the parties
> interested in such hearing as the judge may deem
> necessary. * * *"

This discretion given to the district judge is not absolute and McKnight so held. However, McKnight does not stand for appellant's broad statement of law. McKnight involved a section 89-1015 action where notice was only served upon the water commissioner, and no water users or owners were served with notice nor made parties to the action. The district court then held that one water user's rights pursuant to one decree were subordinate to a second decree, which was not binding upon that user. This Court held that such a determination of rights was a denial of due process and notice should have been given to the water user. We find no such prejudicial abuse of discretion in the instant case. Notice was given to appellant because it questioned the water commissioner's authority on Four Mile Creek; to the water commissioner; and to the Montana Department of Natural Resources and Conservation, which was also made party to the action, pursuant to the district court's order of June 24, 1974. Notice was not given to any of the other water users, however they did not question the water commissioner's authority on Four Mile Creek, nor were their rights adversely affected, as in McKnight.

The final procedural issue is whether the action pursuant to section 89-1015 was improperly allowed because the water commissioner did not post a sufficient bond, and his 1973 term had expired prior to the start of this action. We hold the action was proper.

The district court is given discretion to fix the sum of the water commissioner's bond. Section 89-1003, R.C.M. 1947. Appellant cites authority which involves public officials who posted no bond. Here, the water commissioner did post a one

- 6 -

dollar bond, as fixed by the district court. Appellant did not object to the sufficiency of the bond at the time of appointment, but does so now when the issue has no relevance to this appeal. Not only is the objection untimely, but we find no abuse of the district court's discretion which would affect the outcome of this appeal.

The purpose of sections 89-1001 et seq., R.C.M. 1947, is to provide a uniform, equitable, and economical distribution of adjudicated, stored, and supplemental waters. Section 89-1001(3), R.C.M. 1947. To achieve a uniform method of distribution, the instructions given by the district court must be binding upon the office of water commissioner, not merely upon the individual holding the office at a particular time. Here, William Smith was the water commissioner in 1973 when the controversy arose, and was reappointed in 1974. The controversy over Four Mile Creek arose during the 1973 irrigation season, however it continued into the 1974 irrigating season and still exists at the time of this appeal. For these reasons we find no error in allowing this action to be filed subsequent to the expiration of the water commissioner's 1973 term.

2. It has repeatedly been held by this Court that the purpose of an action pursuant to section 89-1015, is not to adjudicate water rights previously determined by decree, but only to enforce the rights determined by the prior decree. State ex rel. McKnight, supra. In Quigley v. McIntosh, 110 Mont. 495, 500, 103 P.2d 1067, the court stated:

> "It then becomes obvious that the decree must be the yardstick by which the commissioner shall proceed, and, of necessity, must likewise constitute the yardstick for the consideration of instructions given to him by the court. It is, therefore, necessary to look to the controlling provisions of the decree for the authority of both court and commissioner. * * *"

Therefore, the primary questions for the district court to consider

are:

(1) What was adjudged in the former proceeding and decree?

(2) Was the water commissioner distributing the water in accordance with what was there adjudged?  Brennan v. Jones, 101 Mont. 550, 55 P.2d 697.  Furthermore, the district court may refer to the pleadings, judgment roll, and the entire record of the original case when construing a water right decree which is lacking in certain elements or obscure and uncertain in meaning.  Quigley v. McIntosh, supra.

The governing issues of this appeal are:

1) Whether the district court erred in finding the 1890 decree to be obscure and uncertain in meaning?

2) Whether the district court erred in finding Four Mile Creek to be adjudged in the 1890 decree?

The district court found that three aspects of the 1890 decree rendered it uncertain in meaning and susceptible of different interpretations.  First, the respective lands owned by the parties to whom water was decreed were not identified.  Second, the decree referred to both the "Smith River" and the "North Fork of Smith River" without specifying whether they were one and the same or separate streams.  Third, the term "waters of the Smith River" was uncertain.

We agree.  The absence of identifying the respective lands of the water owners by itself is sufficient to support the district court's finding.  Quigley v. McIntosh, supra.  In addition, the transcript reveals the parties themselves were uncertain as to the meaning of the decree.  William Smith, the water commissioner, testified he was the water commissioner from 1960 to the time of this action, excepting two years, and that he had always administered the waters of Four Mile Creek when necessary in the past and no objection was made by appellant's

predecessors in interest. Carl Holt, appellant's ranch manager, testified to a conversation about Four Mile Creek with the water commissioner:

> "Q. Go ahead and tell what he said. A. I told him that I couldn't see where it had ever been decreed and I didn't know whether he had any business up there and I would like to have him clarify it." (Emphasis supplied.)

Next, we determine whether there was substantial evidence to support the finding that Four Mile Creek was adjudged in the 1890 decree. We find there is substantial evidence to support this finding.

George F. Danzer was appellant's predecessor in interest to the 29th water right in the 1890 decree. The 1890 decree, listing George F. Danzer's rights states:

> "Geo. F. Danzer 50 inches Appropriated October, 1878
> "Geo. F. Danzer 125    "          "        April,    1879
> "Geo. F. Danzer 275    "          "        September 6, 1879
> "Geo. F. Danzer 100    "          "        June,    1883"
> (Emphasis supplied.)

Thereafter, George F. Danzer was awarded, under the decree, the 10th right of 50 inches of the "waters of the Smith River", the 11th right of 125 inches of the "waters of the Smith River", the 12th right of 275 inches of the "waters of the Smith River", and the 29th right of 100 inches of the "waters of the Smith River."

In his answer to the original action, Danzer stated he irrigated land in Section 25, Township 10 North, Range 7 East from Four Mile Creek, and that James T. Anderson and E. J. Anderson, predecessors in interest, had diverted 100 inches of water from Four Mile Creek and appropriated the same on or about June 1, 1883, the exact date and amount appropriated which was referred to in the 1890 decree. Additionally, the maps and exhibits introduced at trial show that the land previously described could only be irrigated from Four Mile Creek. The district judge viewed this topography himself and determined this to be true. This

evidence is more than enough to support the district court's finding that Four Mile Creek was adjudged in the 1890 decree. Therefore, there is no need for this Court to rule upon the reliability of the partial transcript of the 1890 proceedings, wherein George F. Danzer makes reference to Four Mile Creek in his testimony.

Appellant next contends the district court exceeded its jurisdiction in finding that Four Mile Creek is a tributary of the North Fork of Smith River, since it cannot determine tributary status nor change a point of diversion in an action pursuant to section 89-1015. This would be correct if the district court had in fact done so. However, the district court only determined what had been adjudged in the 1890 decree, as evidenced by finding of fact 8:

> "That the issue of whether or not Four-Mile Creek was a tributary of the North Fork of Smith River was actually raised in the pleadings of this action and that such issue was actually litigated at the trial thereof and it is res judicata that Four-Mile Creek is a tributary of the North Fork of Smith River and therefore controlled and governed by the 1890 Decree."

The evidence supports the finding that George F. Danzer's 29th right was from Four Mile Creek. Therefore, the 1890 decree necessarily adjudged Four Mile Creek to be a tributary of the North Fork of the Smith River. Otherwise, Danzer's right would not be one of 29th priority, subsequent to the previous 28 rights awarded. Appellant's objections are the same as those considered by the Court in Zosel v. Kohrs, 72 Mont. 564, 578, 234 P. 1089:

> "But plaintiff alleges that at certain times the waters of Baggs Creek below her ditch and before reaching Cottonwood Creek if not taken by her, would sink and be lost. (She does not say whether the water would reach the Pierce ditch.) She therefore avers that Baggs Creek during that period of the year is not a tributary to Cottonwood. But she is precluded from maintaining this position. The decree determined that Baggs Creek is a tributary of Cottonwood Creek; that is an adjudicated fact, and evidence to the contrary will not be

> heard until a change in the condition sub-
> sequent to the decree has been shown. (Howell
> v. Bent, 48 Mont. 268, 137 P. 49.)

> "If it be true that there are times when the
> waters at the head of plaintiff's Baggs Creek
> ditch will be lost unless used by her, not
> being of sufficient quantity to reach to the
> ditch next lower upon the stream, her remedy
> is, in a proper proceeding for that purpose,
> to ask for a modification of the decree per-
> mitting her to use the water when those condi-
> tions obtain. Until modified in that respect
> she is bound by the decree as it is written."

Thus it is appellant, not the district court, who attempts to exceed the scope of section 89-1015.

Appellant raises certain specifications of error, which indicate that some of the district court's findings did exceed the scope of section 89-1015. Findings based upon facts and occurrences subsequent to the 1890 decree, and those outside of the pleadings, record, and judgment role of that decree can- not stand. One such finding is that appellant waived any claim to Four Mile Creek by its appearance in Hanson v. Southside Canal Users, 167 Mont. 210, 537 P.2d 325, 32 St.Rep. 611. An- other is that appellant has no claim to Four Mile Creek water under any Water Right Location or Notice of Appropriation filed subsequent to the 1890 decree. We are not ruling upon the merits of these claims, but merely stating that such matters are not for the district court's consideration.

3. The district court found that appellant interfered with and hindered the water commissioner in distributing Four Mile Creek water by asserting that the 1890 decree did not adjudge Four Mile Creek and by locking and rendering inoperative head- gate controls on diversions from Four Mile Creek. Appellant contends this is error. We disagree. There is substantial evidence in the record to support such a finding. The parties agree that appellant disputed the water commissioner's authority on Four Mile Creek. The water commissioner testified that a

combination lock was placed on a headgate without his permission and without offering the combination to him, and this prevented him from regulating appellant's diversion from Four Mile Creek. The testimony of appellant's ranch manager that the water commissioner knew the combination, and the lock was placed on the headgate to prevent vandalism, merely raises a question of credibility and weight of the evidence. Such matters are for the district court's determination and will not be disturbed on appeal.

Appellant questions the propriety of allowing as costs the expense of certain copies of documents, and the abstractor's fee for title reports used in preparing certain maps. The objections to the copies of documents is that they were ordered and paid for when the original petition for clarification was filed. This petition was subsequently dismissed without prejudice, and other copies were not introduced at trial. Concerning the abstractor's fee, the parties agree that such expense was incurred for the preparation of maps not introduced or used at trial.

It has been repeatedly held that no expense of litigation may be recovered unless covered by section 93-8618, R.C.M. 1947, or taken out of its operation by special statute, by stipulation of the parties, or by rule of the court. Roseneau Foods, Inc. v. Coleman, 140 Mont. 572, 374 P.2d 87; Broberg v. Northern Pac. Ry. Co., 120 Mont. 280, 182 P.2d 851. A party is not entitled to recover every expense of litigation.

To qualify as an "express provision of law" under section 93-8618, R.C.M. 1947, as contended by respondents, a statute must address the issue of what is an allowable "cost" and "disbursement". Section 89-1015, R.C.M. 1947, provides:

> " * * * The judge shall make such order as to the payment of costs of such hearing as may appear to him to be just and proper." (Emphasis supplied.)

The discretion granted the district court in a section 89-1015 action is to determine who will pay the costs, it is not to determine what are allowable "costs". Regardless of whom the district court orders to pay the "costs", section 93-8618, R.C.M. 1947, governs what "costs" are allowable.

It is essential that only "costs" incurred in the action for which the judgment is entered be allowed. This prevents any possibility of multiple reimbursement for the same expense. Even though the petition for clarification was filed for the same objective as the previous petition, which was dismissed, the two were separate and distinct actions. For this reason, those costs incurred in the previous action are not recoverable in the present action, and section 93-8618 states:

> " * * * the legal fees paid for filing and
> recording papers and certified copies thereof
> necessarily used in the action or on trial * * *".

A reading of the statute reveals that it is not fatal if the copies are not introduced at trial. They are allowable costs if the district court determines they were "necessarily used in the action", as was done here. See Kenyon v. Automatic Instrument Co., 10 F.R.D. 248, 254, for the distinction between the phrases "use in the case" and "use on trial".

In considering the expenses incurred in making maps section 93-8618 States:

> " * * * the reasonable expenses for making a
> map or maps if required, and necessary to be used
> on trial or hearing * * *".   (Emphasis supplied.)

This specifically required the map to be used on trial or hearing. The introduction in evidence of a map may not be necessary if some use is made at trial and it is necessary to an understanding of the case. However, in the present case no use whatever was made of the map and for this reason the abstractor's fee connected therewith is not an allowable cost.

Appellant's final objection is to the attorney fees

awarded respondents, which were incurred in providing proof

of the matters of fact set forth in respondents' request for

admissions.

Rule 37(c), M.R.Civ.P., in 1974 stated:

" * * * and if the party requesting the ad-
missions thereafter proves the genuineness of
any such document or the truth of any such
matter of fact, he may apply to the court for
an order requiring the other party to pay him
reasonable expenses incurred in making such
proof, including reasonable attorney's fees.
* * *"   (Emphasis supplied.)

Rule 7(b)(1), M.R.Civ.P. and Rule 5(a), M.R.Civ.P. govern

how such an application is to be made.   Rule 7(b)(1), M.R.Civ.P.

states:

"An application to the court for an order shall
be by motion which, unless made during a hearing
or trial, shall be made in writing, shall state
with particularity the grounds therefor, and
shall set forth the relief or order sought.   The
requirement of writing is fulfilled if the motion
is stated in a written notice of the hearing of
the motion."   (Emphasis supplied.)

Rule 5(a), M.R.Civ.P. states:

" * * * every written motion other than one which
may be heard ex parte * * * shall be served upon
each of the parties affected thereby * * *".
(Emphasis supplied.)

Decisions rendered prior to the enactment of the Montana

Rules of Civil Procedure were in accord with the requirement of

Rule 5(a), M.R.Civ.P., and the purpose of the notice requirement

is best expressed in   McVay v. District Court, 126 Mont. 382,

393, 251 P.2d 840:

"While our Codes do not specify all the in-
stances in which notice of the time for making
or presenting an intended motion must be given,
the general rule is that a party interested
in resisting the relief sought by a motion has
a right to notice and an opportunity to be heard.
* * *

"The requirement that timely notice be given
of the making of the proposed motion is to
afford opposing counsel the opportunity to be
present and intelligently to oppose the motion
when made."   (Emphasis supplied.)

Here, respondents incorporated their "Motion" within

their proposed findings of fact and conclusions of law. The first notice to appellant of this motion was when the district court awarded attorney fees to respondents in its findings of fact and conclusions of law. Such notice is insufficient to allow a resisting party "the opportunity to be present and intelligently to oppose the motion when made." For this reason, the award of attorney fees was error.

This cause is affirmed in part and reversed in part. It is remanded to the district court to amend the findings of fact, conclusions of law, and the judgment and to retax costs in accordance with this decision.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 15 -